# CHARLESTON

## Johnson *v.* Ohio River Railroad Company.

Submitted September 13, 1906.    Decided December 18, 1906.

1.   Specific Performance—*When Allowed.*
    Specific performance. of covenants, on the part of a railroad company, to build, provide and maintain road-crossings, cattle guards and other structures on its right of way through a farm, entered into as and for part of the consideration for the right of way, may be enforced in equity by mandatory injunction. (p. 143.)

2.   Same—*Remedy at Law.*
    Courts of equity have discretionary power to refuse specific performance of contracts and covenants, clearly valid in law, when the situation of the plaintiff, as disclosed by his bill and evidence, is such that relief of that character would amount to nothing more than a mere vindication of his naked legal right, for which his remedy at law is fully adequate.   In such cases, as in others of equity jurisdiction, inadequacy of legal remedy must be shown. (p. 148.)

3. Same—*Action for Breach.*

If upon a bill to compel specific performance, by a railroad company, of covenants to construct cattle-guards, a chute for a stone quarry and an out-let for a spring, it does not appear that any use of such structures would be made, if erected, relief will be refused and the plaintiff remitted to his action at law for damages for breaches of the covenants. (p. 148.)

4. Covenants—*Breach.*

No right of action accrues against a railroad company on its covenant to construct and maintain road-crossings at such places as the covenantee shall designate for the purpose, until such designations have been made and notice thereof given. (p. 150.)

5. Specific Performance—*Relief.*

Recovery of purely legal demands for money cannot be had upon a bill to enforce specific performance of covenants, having no immediate connection with such demands, or the matters out of which they arose, which fails for want of equity. (p. 151.)

Appeal from Circuit Court, Wood County.

Bill by Abraham Johnson against the Ohio River Railroad Company. Judgment for defendant, and plaintiff appeals.

*Modified and Affirmed.*

McCluer & McCluer and Dave D. Johnson, for appellant.

J. W. Vandervort, for appellee.

Poffenbarger, Judge:

On an appeal from a decree of the circuit court of Wood county, Abraham Johnson complains of the dismissal of his bill against the Ohio River Railroad Company, upon a final hearing upon the pleadings and evidence. The suit is founded upon a contract made between the parties, bearing date February 22, 1883, by which the plaintiff sold, and agreed to convey, to the defendant, a right of way through his farm, situated on the Ohio river, north of Parkersburg, for its road bed and track, and the defendant bound itself to do the following things: (1) "Build on, the line of said road cattle-stops between the fields of said Johnson, as well as between his lands and the lands of adjoining owners;" (2), "make five good road crossings over said railroad track on said Johnson's land at such points as said Johnson may designate;" (3), "construct, provide and maintain one good

roadway under said railroad at some point on the line at or about the stone quarry on the lands of said Johnson to be designated by said Johnson;" (4), " construct and maintain a sufficient outlet for the spring near the stone quarry aforesaid;" (5), " make and maintain a way under said railroad near the lower end of said stone quarry sufficient and proper for the use by said Johnson or his assigns for a chute or other purposes;" (6), "build, maintain and keep in repair one line of fence on the line of said road and right of way through the lands of said Johnson." The object of the bill was the specific enforcement of these covenants, by means of a mandatory injunction. Further demands are made for compensatian for damage to the plaintff's land caused by the washing of a stream, as the result of a change made in its course by the defendant in constructing its road; reimbursement for money expended in replacing a bridge across said run; and damages generally for non-performance of the covenants.

As originally prepared and filed, the bill was held insufficient on demurrer because it did not aver the tendering of a deed. It was amended by an allegation of the lack of any demand or request for a deed by way of excuse for non-delivery or tender, and, as amended, a second demurrer to it was sustained, and it was again amended by allegations, denying the right of the defendant to have a deed, because of non-performance of its covenants, but tendering one for delivery in case the court should find and determine that delivery thereof should be made. The demurrer to the bill as so amended was overruled.

The contract provided that the plaintiff should deliver a deed for the right of way when required by the defendant. Possession of the right of way was taken very soon after the date of the contract in the year 1883, and it does not appear that any deed has ever been requested, unless it can be said that the demurrers to the several bills shall be deemed requests for it. A defense set up in the answer is lack of conformity of the deed tendered with the requirements of the contract, because it shows no clause of warranty and has not been executed by the wife of the plaintiff, it being averred in the answer that he has a wife whose name is unknown and who is still alive.

The contract is easily and readily separable, and the parties did separate it at the date of its execution. The defendant paid the purchase money, took possession of the right of way and thereon constructed, and has ever since operated, its road. Immediate delivery of the deed was not intended or made, nor was it intended that there should be any obligation upon the plaintiff to make delivery thereof until demanded. By express provision of the contract, a request for the deed was made a condition precedent. Performance of the covenants was not in any sense dependent upon the delivery of the deed. The defendant bound itself by the executory contract to make cattle-stops, crossings, fence, chute and spring out-let, and the necessity of these structures arose simultaneously with the construction of the road, and before the delivery of a deed was intended. The mere enforcement of one or more covenants in a contract does not necessarily involve all parts of it, and it is manifest in this instance that it does not. In view of the separable nature of the contract, we think it was unnecessary to aver the tender of a deed.

Plaintiff's farm consists of two parts, separated by a farm belonging to one Morgan Henrie, and extends from the river back on to the river hill. The railroad runs along the base of the hill part of the way, especially through the lower part of the farm, and through the bottom on the upper part. For the most part, plaintiff's valuable land lies between the railroad and the river, while his residence, barn, stone-quarry and spring are back of the railroad. Adjoining the upper part of the farm lies land belonging to William Johnson.

As to the cattle-stops, the bill avers the duty of the defendant not only to build and construct, but also to maintain, them and then charges that it has wholly failed to construct and maintain them in good order and condition as the agreement and the law requires. The answer denies any obligation upon the defendant to maintain cattle-stops, but, nevertheless, avers that the defendant has constructed and maintained the same as far as there was any necessity therefor or as the same could be of any advantage to the plaintiff. It appears from the evidence that cattle-stops were originally constructed between the fields of the plaintiff and between

his lands and adjoining lands, but that since the construction of the road the division fences have been removed so that the maintenance of such stops at the points from which the fences have been removed became useless and unnecessary. They were constructed of wood, some twenty years before this suit was brought, and have fallen into decay. Only one has been replaced, namely, the one on the line between Abraham Johnson's farm and the farm of William Johnson. No fence has been constructed along the right of way line on the side thereof next to the river, and no fences seemed to have been maintained between the fields on that side of the road or between the adjacent farms, except the plaintiff's and that of William Johnson. The plaintiff himself says in his testimony that the lack of these cattle-stops has not inconvenienced him a great deal, and further that "They had no business there and of course they wouldn't do much good; the cattle-stops haven't hurt a great deal, but they wasn't kept up."

The facts developed concerning the road crossings are that three have been maintained, one at the plaintiff's house, one a short distance below where a road comes down from his barn, one near the line between his lands and those of Morgan Henrie's, and one just below the Morgan Henrie land. One was made near the stone quarry, but has not been kept in good condition. Failure to keep it up seems to have been due to lack of necessity or use for it. For a short period since the railroad was built, the stone quarry was operated under a lease and the crossing was put in more for the purposes of that quarry than for general purposes. Since the cessation of work there, but little, if any, use has been made of the crossing and it has been allowed to fall into decay. Since the bringing of this suit a new crossing has been made near the lower end of the farm, but it does not appear that the place at which it was put in had been designated by the plaintiff for that purpose. There is no evidence showing that the defendant has failed to construct any road crossings at any point designated for that purpose by the plaintiff. Such crossings as have been made were constructed more than twenty years ago and presumably at places then designated. There is evidence of general complaint made on account of non-performance of covenants but it fails.

to show the designation of any particular point for the location of a road crossing.

As the road was originally constructed, two undergrade crossings were made, one just above the quarry and another at the spring just below it.    At or about the time of the completion of the road through these lands, a land-slide occurred in the locality of these two . openings which necessitated alterations.    The officers of the company, including the president, appeared on the grounds, made an investigation, decided the preferable means of remedyiñg the difficulty to be the closing of these openings, and sent for the plaintiff who appeared on the grounds, and held a conversation with the president.    Immediately thereafter, both openings were filled up.  What passed between the plaintiff and the president of the company at that time is not disclosed.  Col. Thompson, who was then President, has been dead for several years and William Cherrington, who was then Superintendent and on the grounds, is said to be in Oregon, and the whereabouts of a Mr. Ault, who was there in some official capacity, are not known.   Mr. C. A. Bryan, who was also there in some official capacity, says the plaintiff consented to the filling of these openings, but, on cross-examination, admits that he did not hear him give any express permission to abolish the crossings permanently; but it does appear that the plaintiff was on the ground, not only at the time of the decision that the openings should be filled, but also afterwards, while the work of filling was in progress, and that he never at any time made any objection.

It will be observed that what has been said concerning the undergrade crossing applies to some extent to the outlet for the spring.   Originally an opening was left under the track so that vehicles and cattle could pass, from the lands just across the railroad from the spring, under the track, to the spring.   This was filled and closed, as has been stated, because of the great difficulty in maintaining the track.   The land-slide pressed against the bents under the railroad, pushing them out of position and thereby obstructing the crossing and disturbing the track.  When the opening was filled, a tile was put in so as to lead the water from the spring to the opposite side of the road, and the earth and materials used in making the fill seem to have spread over the

spring itself and covered it up. When the tile was put in, the spring, it seems, was incased in a loose stone wall and from it tiling ran across the right of way under the fill. Whether it carries any water from the spring now is not disclosed, and it seems to be rather admitted that the spring itself is covered up with the earth and materials used in the fill. The plaintiff, however, has not suffered any injury by reason of lack of water. He says "I couldn't get any water there; but we had water; it was to have the spring when we did need it; not so much now."

The chute for the stone quarry was never constructed, unless it was the understanding that one of the openings originally made was intended for that purpose. However this may be, it is plain that there is no such opening now and the answer admits the obligation upon the company to provide one and expresses a willingness to comply therewith.

The defendant partly complied with its covenant to build a fence on the east side of the right of way, about two years after the road was put in operation,—some twenty years ago,—but has given it no further attention and much of it, if not all, has fallen down or been destroyed. Plaintiff has allowed the land to grow up in brush and briars and, at the stone quarry, the fence was partially destroyed by plaintiff's lessees in working the quarry.

The most serious complaints set forth in the bill and in the argument relate to the failure of the defendant to replace a bridge across a small water course called Miller's Run, and to compensate the plaintiff for damages to his land occasioned by washings made by said run. The right of way of the railroad, when located, crossed Miller's Run in front of Johnson's residence, but not at right angles. For some distance, the watercourse ran with the right of way and probably about where it was necessary to place the track. At this point a private road crossed the run and plaintiff had constructed a bridge there by means of which to cross it. Before the work of construction began, an agreement was made with him by which the defendant was authorized to alter the course of Miller's Run by means of a ditch, so that it would cross the center line of the right of way, from

east to west, at a point some distance above the bridge and then run on, or partly on, the right of way, south, parallel with the railroad track until it should come into the natural location of the watercourse. For this privilege, the plaintiff was compensated, and when the road was constructed a grade crossing was made over the track at the point at which plaintiff had maintained the bridge across Miller's Run. That bridge was removed or covered by the fill made in the old bed of the stream, and a new bridge constructed across the new location of Miller's Run, reaching from the grade crossing over the track to the opposite side of the run. Sometime afterwards this bridge was destroyed by high water in the Ohio river. In his testimony the plaintiff fixed the date in the year 1884; but afterwards, by permission of the court, filed his affidavit in the cause to the effect that the correct date was 1898, which affidavit was accompanied by a certificate from the office of the director of the United States Weather Bureau at Parkersburg, showing a very high stage of water in the Ohio river on March 26, 1898. In 1901, the plaintiff replaced the bridge at his own expense, the railroad company having refused to do so. In order to maintain its road bed, the railroad company has, from time to time, replaced the earth washed away on its side, so that now the stream has worked its way over until it is nearly, if not quite, off of the railroad right of way and on the land of the plaintiff.

Jurisdiction in equity to enforce, by mandatory injunction, specific performance of covenants, on the part of a railroad company, to construct crossings, cattle-guards, and other structures on its right of way, when such covenants constitute part of the consideration for the grant of the right of way, is too firmly established by the decisions to admit of any doubt, and the principles underlying the rule are the same as those upon which jurisdiction and power to compel specific performance of other covenants and agreements are founded. The remedies at law are inadequate because they are indirect, in so far as they do give relief, and stop short of the enforcement of the covenant. They give damages in lieu of performance. To this there is added the consideration that the covenantee cannot enter upon the covenantor's premises, as a rule, to erect the structures himself. To

deny specific performance, therefore, is to deny to the covenantee any remedy by which he may obtain that to which he is entitled.    The covenantor may prefer to pay damages repeatedly and not put in the crossings at all.    Besides, he has it in his power to delay the work indefinitely and thereby place a burdensome and unjust restraint upon the covenantee in respect to the use of the property.    The jurisdiction for specific performance of such covenants has been emphatically declared and exercised in the following cases: *Storer* v. *Railway Co.*, 2 Younge & C, Chy. 48, the leading case; *Wilson* v. *Railway Co.*, L. R. 9 Eq. 29; *Lytton* v *Railway Co.*, 2 Kay & J. 394; *Sanderson* v. *Cookermouth Railway Co.*, 11 Beav. 497; *Green* v. *Railway Co.*, L. R. 13 Eq. 44; *Lawrence* v. *Railway Co.*, 36 Hun. (N. Y.) 467; *Post* v. *Railroad Co.*, 123 N. Y. 580; *Railroad Co.* v. *Railroad Co.*, 98 Ala., 400; *Gray* v. *Railroad Co.*, 37 Ia. 119; *Baker* v. *Railroad Co.*, 57 Mo. 274; *Clouse* v. *Railroad Co.*, 14 Am. & Eng. R. R. Cases 456.    No decision of this Court asserts the doctrine as between a private person and a railroad company, but *Moundsville* v. *Railroad Co.*, 37 W. Va. 92, holds that a municipal corporation may compel a railroad company to restore a street, in which it has located its road, to its former condition, as nearly as may be, by means of a mandatory injunction, although there is a remedy at law by *mandamus*.    While the decision in that case was based upon the finding and determination, that the defendant was guilty of maintaining a public nuisance, which brought the case within the jurisdiction of equity to abate nuisances, the Court were nevertheless of opinion that *mandamus* would be less convenient and efficacious as a remedy than mandatory injunction, because the former is less flexible and pliable than the latter, and, therefore, not so adequate to meet all the exigencies of such a case.    It has been suggested that, since the statute makes it the duty of railroad companies to construct crossings, cattle-guards and fences, in consequence of which the duty is imposed by law, whether there be an express contract or not, *mandamus* lies.    But, this bill is not predicated upon the legal duty to perform. It is founded upon the contract, and, as there is jurisdiction in equity for specific performance of the covenants, the provision by statute of an additional legal remedy does not oust

such jurisdiction.     In that view, the remedy is merely cumulative.

Though the jurisdiction is undoubted, it does not follow that the plaintiff is entitled to the relief he seeks.     Manifestly the real object of the bill is to obtain reimbursement for the outlay in replacing the bridge and damages for the injury done by the change made in the course of Miller's Run; for it appears in the testimony of the plaintiff himself that the cattle-guards, the chute for the stone quarry and the fence would be practically worthless to him at this time. He has an ample supply of water without the flow from the spring and he fails to show that he contemplates any change in the operation of his farm which will render the water from that spring either necessary to his purposes or useful to him.     The same is true of that portion of the fence concerning which complaint is made, even if there be power in the court to compel the building thereof, a question which we do not decide.     The land has grown up in brush and briars and he does not say he intends to clear it up or devote it to any use for which the maintenance of a fence would be necessary.     As to the stone quarry, it has not been used for years and he does not disclose by his bill or his evidence that he contemplates the operation of it in the future.     If the chute were put in, the spring out-let perfected and the fence built, it seems certain, from the showing made on this bill, not only that no use would be made of them, but that they would be neglected by the plaintiff himself to their own destruction by casualty and the operation of natural forces. Weeds, brush and briars would be allowed to grow up around the spring and the spring itself to fill up with sediment and decayed vegetable matter.     Like forces would operate to the detriment of the fence and chute.

It is well settled that courts of equity have the discretionary power, when the circumstances warrant it, to refuse specific performance of contracts.     Ordinarily it is not done, because it is apparent to the court that to refuse it would work injury and injustice, and deny an adequate remedy for the enforcement of a useful and valuable right.     In all such cases, the remedy is granted as a matter of course.     Since that is the ordinary status of the plaintiff, this Court has been accustomed to say such relief will be so granted. But

here we have the exceptional case in which the Court can see that the enforcement of the covenants is virtually the exaction of a penalty, imposing a burden upon the defendant, without conferring any corresponding benefit, if, indeed, any benefit at all, upon the plaintiff. It is plain, therefore, that here, if anywhere, the discretionary power to withhold the remedy ought to be exercised. In such cases the practice is to refuse it. In *Wilson* v. *N. & G. J. Railway Co.*, 9 Chy. App. 279, the court refused specific performance of a covenant on the part of the defendant to erect, set up and construct, at its own cost, in a good, substantial, and workmanlike manner a station on its line, as located through the plaintiff's land, because it did not appear what use was to be made of the station. There was no covenant to stop trains at that point and the court could not see that specific performance would be of greater advantage to the plaintiff than a recovery at law of damages for the breach.

This view and conclusion accord perfectly with the general principles, governing the exercise of this branch of equity jurisdiction. "The requisites, upon which this equity arises, are: The performance must be necessary; there must be a valuable consideration; it must be practicable; the agreement mast be certain and mutual." Simrall, J., in *Aston* v. *Robinson*, 49 Miss. 348, 351. Here we have all except the first. Nothing is offered here as ground for relief, but naked legal right, for vindication of which the legal remedies are entirely inadequate. To obtain specific performance the additional element of equity in the case must be shown. In the enforcement of specific performance, courts of equity do not depart from the general principles of equity jurisprudence. The test here as in other cases is inadequacy of the legal remedy. "The court uniformly refuses to decree specific performance, except in cases where such decree would be strictly equitable." Chilton, J., in *Blackwilder* v. *Loveless*, 21 Ala. 371, 374. The jurisdiction is seldom exercised in the case of contracts, relating to personal property, because the legal remedy is adequate. "Generally, specific execution of a contract, in regard to personal property, will not be decreed, but the parties will be turned over to their legal remedies, because they are more convenient than equitable remedies,

and damages generally afford ample and satisfactory compensation." Moncure, J., in *Hale* v. *Wilkinson*, 21 Grat. 75. This Court has at all times adhered rigidly to these general principles. It declares that, in cases of specific performance, the Court is controlled by that sound and reasonable discretion, which governs itself as far as may be, by general rules and principles, but which at the same time withholds or grants relief according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties. *W. Va. O. & O. Co.* v. *Vinal*, 14 W. Va. 637; *Rader* v. *Neal*, 13 W. Va. 373; *Abbott* v. *L'Hommedieu*, 10 W. Va. 667.

It has already been stated that there is neither an allegation nor proof of any designation by the plaintiff of any point at which he wishes either a grade, or an under-grade, crossing made. By the terms of the contract, his designation of such points is made a condition precedent. How could the railroad company safely put in a crossing without an indication from him as to where he desired it to be made? At the time the road was constructed, a number of crossings were made, presumably at points designated. The under-grade crossings were afterwards filled up by the defendant with the knowledge and acquiescence of the plaintiff. We do not mean to say or hold that he thereby waived, or estopped himself from claiming, the opening of an under-grade crossing at some other point at which it could be maintained, or at the same place, if conditions should make it practicable at a later date to maintain one there, but we do hold that he cannot have a mandatory injunction for the construction of such an under-grade crossing, or the re-opening of one of the old ones, until he alleges and proves a specific designation of the point at which he desires it, and notice thereof to the defendant, or a demand for the re-opening of one of the old crossings, which would be in substance the same thing.

The demands for compensation for replacing the bridge and for damages for the loss of land, occasioned by the washing of Miller's Run, are purely legal and could not be enforced here except as incidents to the granting of some equitable relief. Whether the enforcement of them could be

had as incidents to the enforcements of covenants in the contract with which they are in no way connected it is unnecessary to decide. The crossing at that point, since the replacement of the bridge, is, so far as the evidence shows, reasonably good and sufficient for the purposes for which it was intended, as are all the other crossings, which seem to be in use. As it is clear, therefore, that the plaintiff has wholly failed to make a case for equitable relief in respect to any of the covenants of the contract, it is not perceived how the Court can give him any relief as to these legal demands. For them, he may resort to his action at law as well as for damages for breaches of any covenants in the contract, which he may be able to establish.

As the decree complained of takes the form of an absolute and final adjudication of all the matters set forth in the bill, in consequence of which it might be a bar to any other proceeding, either at law or in equity, for the vindication of rights which the plaintiff may have in respect to the covenants, or which may hereafter accrue to him, it will be necessary to modify it, by the insertion of a clause, saving to him the right to prosecute any other proceeding, either at law, or in equity, which he may deem it advisable to institute. But, as he did not ask for this in the court below, where, for aught that we can see, it would have been readily granted him, he is not entitled to recover the cost of this appeal. See *Frye* v. *Miley*, 54 W. Va. 324; *Vandorn* v. *County Court*, 38 W. Va. 267; *Christian* v. *Vance*, 41 W. Va. 754.

*Modified and Affirmed.*