# CHARLESTON.

H. W. BEARD *v.* COAL RIVER COLLIERIES, *a Corporation.*

## (No. 5691)

### Submitted February 16, 1927. Decided February 22, 1927.

MINES AND MINERALS—*Surface Owner May Not Enjoin Use of Tramway to Adjoining Tract, Built Without His Objection, by One Owning Minerals.*

Where plaintiff owns the surface and defendant the minerals thereunder with right to use the surface, timber, rock, water, etc., incident to mining the coal and with exclusive right to build railroads and ways thereon and appurtenant thereto, and under *bona fide* claim under his deed and also by virtue of consent of an occupant of the land who claims equitable title thereto under a verbal agreement with plaintiff (and who has made valuable improvements upon and lived thereon for eight or nine years), enters upon and constructs a trestle and tramway over said surface to a coal mine on an adjoining tract for the purpose of hauling coal therefrom, all with full knowledge of plaintiff who stands by and makes no

objection until after defendant has expended large sums of money and has begun to haul a large daily tonnage from the mine over the tramway and trestle, the former will be estopped from enjoining the use of the improvement by the latter.

(Estoppel, 21 C. J. §§ 163, 164; Mines and Minerals, 40 C. J. § 507 [Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Boone County.

Suit for injunction by H. W. Beard against the Coal River Collieries. From a decree refusing to dissolve injunction, defendant appeals.

*Decree reversed; injunction dissolved; remanded.*

*George D. Moore,* for appellant.

*H. W. Bowers,* for appellee.

LIVELY, JUDGE:

This in an injunction to prevent defendant from hauling coal over a tramway and trestle on plaintiff's land known as Richards tract, from an adjoining tract known as the McArthur tract. Plaintiff owns the surface of two tracts on Dog Hollow Branch of Lick Creek, a tributary of Coal River in Boone County, which he acquired in 1915 from Jarrett, successor in title to Kinder, and over one of these tracts defendant constructed a tramway for a distance of about 195 feet and a trestle 76 feet long, 38 feet of which is over the surface claimed to be owned by plaintiff, to the adjoining McArthur tract. This improvement was made in the spring of 1925. Kinder, predecessor in title to plaintiff Beard, owned the two tracts in fee, but in 1903 conveyed the mineral thereunder together with mining rights which later passed to defendant. Plaintiff claims that defendant has no right to haul coal from the McArthur tract or any other tract over the surface of his land; while defendant claims that it has such right under its lease and under Kinder's deed of 1903 conveying the mineral and mining rights; and further, that plaintiff "stood by" knowing that the tramway and trestle

were being constructed for the purpose of hauling coal from the McArthur tract over the surface of plaintiff's land to the tipple, made no objection, and is estopped from now enjoining the use of this valuable improvement made by defendant; that his damage, if he is entitled to any, is slight and is not irreparable. Upon the bill and exhibits, answer and exhibits, and affidavits in support of each, the lower court, on February 22, 1926, refused to dissolve an injunction formerly awarded inhibiting defendant from in any way using the surface. This appeal followed.

When Kinder sold the mineral with mining rights in 1903 to Herbig, Trustee, predecessor in title to defendant, a large boundary of contiguous coal lands was purchased by the trustee for the purpose of extensive mining operations, a fact which seems to have been generally known among the landowners, and defendant afterwards acquired all of the coal surrounding and under the surface tracts owned by plaintiff, and is carrying on the contemplated extensive coal mining operations. In the deed to the mineral and mining rights from Kinder to the trustee in 1903, and in the deeds from adjoining properties to him, the granting clause gives the vendee, his successors and assigns the right to enter the lands to prospect for, mine and otherwise operate, manufacture, remove the minerals, use and divert water courses, take timber for mining purposes, "And the exclusive right-of-way for all railroads, ways and pipe lines that may hereafter be located by the party of the second part, his successors or assigns, or by any person or corporation under authority of said party of the second part, his successors or assigns, upon or appurtenant to the hereafter described land." Plaintiff says this grant does not empower defendant to convey coal from other lands over the railroads or ways which defendant may construct on the tract deeded; while defendant contends that properly construed in view of the circumstances surrounding the transaction, the grant gives such right, and that it must be most benignly construed in favor of the grantee. This is the basis of the first ground of error in the decree refusing to dissolve the injunction.

It appears that plaintiff after he had purchased the surface in 1915, made a verbal contract about June, 1916, with E. A. Richards, by which Richards took possession of the land and erected a house thereon, and with the understanding that he, Richards, should pay rent thereon at a monthly rate, and if he was unable to purchase the property before Beard sold it, he was to have the refusal at the price of $500.00, and if he was not able to buy and Beard made a sale, then he was to be paid for his improvements less a reasonable sum as rent. Richards built a six-room house in 1916, Beard furnishing the rough lumber, and was in possession and exercising ownership over the surface at the time the tramway and trestle were constructed, and was employed by defendant in the construction of both, and in the opening of the mine on the McArthur tract to which the roadway led. While this development was being done, Richards says that he and Beard, who lived one and one-half miles away from the land, talked over the situation, and that, ''Beard knew the development work was going on, and he knew that it was for the purpose of hauling coal over this surface from the adjoining tract, namely from the McArthur tract of land.'' Beard does not controvert this statement. He tacitly admits it, but it is argued for him that he was under no obligation to speak or object; that he could presume that defendant having the right to build ways upon the surface would use them in hauling coal from the tract on which they were built, and not haul coal from an adjoining tract. On these facts defendant says plaintiff is estopped to enjoin the use of the tramway and trestle after he has stood by and allowed it to expend many thousands of dollars. This is the second point of error relied upon by defendant.

Another principle is relied upon for the reversal of the decree. The affidavits show the surface to be worth from $15.00 to $20.00 per acre, and the trestle and tramway do not interfere with any use for which the property has been or can be used; and that there is being mined from the McArthur land from driftmouth No. 8 (to which the tramway leads) about 350 tons of coal per day and this tonnage goes

over about 200 feet of plaintiff's land to the tipple. Defendant says that equity will not enjoin where the relief granted to plaintiff will be greatly disproportionate to the injury to defendant, especially where plaintiff has an adequate remedy at law. The well known principle of "balancing of equities" is invoked, and it is asserted that on this ground the trial chancellor has abused his discretion.

We do not deem it necessary to construe the clause in the deed from Kinder to Herbig, Trustee, made in 1903, relative to the right of defendant to haul coal over the surface from adjoining lands; but it is well to comment thereon because it is a part of the reason or basis on which defendant entered on the surface with its tramway and trestle. Defendant says it entered in good faith under this clause in the deed, as well as upon assurances from Richards who was in possession of the land, and exercising full ownership over it. The deed grants to Herbig, Trustee, and his assigns all the coal, all the metals, minerals, stone, oils and gases, mineral waters and mineral substances of every character on, in or under the land; and all necessary and convenient rights and privileges to prospect for, mine, manufacture and remove same, and for such purpose to make use of and divert water; to take timber for mining purposes; "and the exclusive rights-of-way for all railroads, ways and pipe lines that may be hereafter located * * * upon or appurtenant to the hereinafter described land." It will be observed that there are no express words which give to the grantee the right to transport coal, oil or gas or other mineral over the surface; and plaintiff argues that although the first part of the clause gives right to enter and remove the minerals with all necessary and convenient rights for that purpose, the right to exclusive railroads and ways contained in the latter part of the clause quoted above, refers to and says how the minerals can be removed from that particular land, and is but a repetition of the grant of mining rights given in the first part of the clause. It is not altogether clear what was the intention of the parties. The *exclusive* right for railroads, ways and pipe lines over the land is rather inconclusive of the intent; for it may

well be observed that no person would likely construct a railroad or build a pipe line for the purpose only of taking out the coal or oil or gas from that land—commodities not owned by such other person. The situation of the parties and the subject matter, together with the circumstances surrounding them relating to transportation of the minerals to market, should be considered. Defendant, as above stated, says it entered in good faith under this clause, and had a substantial claim of right to do so. In addition to this claim of right it appears that Richards was in possession, was living on the land in a house constructed by him, and had been there since 1916, claiming the land as his own. And defendant says in its answer, to which there was no replication, and which must be considered as admitted (*Bierne* v. *Ray,* 37 W. Va. 571), that plaintiff knew the improvement was being made by defendant in good faith under claim of right, for the purpose of taking the coal from the McArthur tract, and remained silent, and that after the tramway and trestle were completed and the coal began moving, plaintiff went to Richards, to whom he had sold the land, and fraudulently requested Richards to agree to modify his purchase so as to exclude therefrom that portion of the land over which the improvement was being operated, and that Richards consented thereto. Richards says that after the development work was started (which he helped to do as an employee of defendant), he and plaintiff talked over the situation and they agreed that either he (plaintiff) was to sell the property, or Richards was to sell it, or have control of the property, "or either the part of it over which the right-of-way went over, that is, we were to have it either way." We do not deem it necessary to decide what interest Richards had in the land by virtue of his verbal agreement with Beard, coupled with his possession and improvements. He was claiming to be the owner to defendant; and defendant was in part relying thereon. Under these circumstances fully known to plaintiff, we hold that he is estopped in a court of equity to inhibit the use of the improvements, on the ground, as he alleges, that he has no remedy at law.

Where two persons suffer injury, both acting in good faith, the one who by his acts, conduct or omissions has brought about the injury must suffer. The doctrine of equitable estoppel applies. It is quite well established that where the true owner of property holds out another, or, with knowledge of his own right, allows another to appear as the owner of or as having full power of disposition over the property, the same being in his *actual* possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Bigelow on Estoppel (6th Ed.) p. 607. Where a person remains silent, knowing his rights, under such circumstances as would require him to speak, either designedly or with wilful disregard of the interests of others, and thus induces or misleads another to conduct or dealings which he would not have done but for the misleading silence, he will not be permitted to afterwards assert his rights to the detriment of the person misled. *N. & W. Ry. Co.* v. *Perdue,* 40 W. Va. 443, citing *Jowers* v. *Phelps,* 33 Ark. 468. Vol. 21 C. J. p. 1152. Sec. 155, states the general rule as follows: ''Where a person stands by and sees another about to commit or in the course of committing an act infringing upon his rights, and fails to assert title or right, he will be estopped afterward to assert it. Nevertheless it is necessary to an estoppel that the party against whom it is claimed should at the time be apprized of his rights, since silence without knowledge works no estoppel.'' The fact that he remained silent does not estop him. The circumstances must be such that he must speak or act. *Water Co.* v. *Browning,* 53 W. Va. 436.

In the instant case there is a serious question of the right of plaintiff under the deed of 1903 and the mining privileges thereunder, to prohibit the use of the surface for railroads, ways and pipe lines for transportation of coal and the like from other tracts; and in addition thereto, Richards was in possession of the land, claiming it and ostensibly owning it by making improvements thereon for several years until it is known as the ''Richards tract,'' and actually assisting in building the tramway and trestle and in opening the mine on the McArthur land to which they led. Plaintiff knew

these facts, was in consultation with Richards while the work was in progress, and remained silent. Besides, it is charged that he and Richards fraudulently changed their verbal agreement of sale while the improvement was in progress. "Mere silence will not work an estoppel; to be effective it must appear that the person to be estopped has full knowledge of all the facts and his rights, and intended to mislead or at least was willing that the other party might be misled by his attitude." *Campbell* v. *Lynch,* 88 W. Va. 209. As bearing upon the duty of plaintiff to speak or act before defendant had expended the large sums in making the improvements, under the facts here developed, see *Carter* v. *Price,* 85 W. Va. 744.

On the other point of error, namely, that it would be inequitable to require defendant to remove its tramway and trestle, and abandon its mine on the McArthur tract because the injury to defendant would be disproportionate to the benefit to plaintiff, and in good conscience should not be required, it is unnecessary or perhaps improper, in view of the present status of the pleadings and evidence, to decide. The only question we have before us now is whether the injunction should have been dissolved under the pleadings, exhibits and affidavits. In passing, we may say that a court of equity has discretion to refuse relief where the benefits to a plaintiff are small and insignificant as compared with the damage and inconvenience done to defendant if the relief to plaintiff was granted. See *Maust* v. *Railway Co.,* 219 Pa. 568; *Kendall* v. *Hardy,* 208 Mass. 20; *Chapin* v. *Brown,* 15 R. I. 579; 10 Atl. 639; *Bochterle* v. *Saunders,* 36 R. I. 39, 88 Atl. 803; *Johnson* v. *Ry. Co.,* 61 W. Va. 141; *Georke Co.* v. *Wadsworth,* 73 N. J. Eq. 448, 68 Atl. 71.

The decree refusing to dissolve the injunction will be reversed; the injunction dissolved, and the cause remanded.

*Decree reversed; injunction dissolved; remanded.*