THE CHARLESTON NATIONAL BANK AND

ROBERT E. KELLY, JR., *Trustees, Etc.*

*v.*

FRANK K. THOMAS

(No. 10989)

Submitted September 5, 1958. Decided October 14, 1958.

*Mahan, White, Higgins & Graney, Stanley Higgins, Jr.,* for appellants.

*Karl P. Warden, Myron R. Renick,* for appellee.

GIVEN, JUDGE:

Plaintiffs, The Charleston National Bank and Robert E. Kelly, Jr., Trustees under the last will and testament of Robert E. Kelly, instituted a proceeding in the Circuit Court of Fayette County, alleging that defendant, Frank K. Thomas, had entered certain enclosures, cut, destroyed, or removed, certain fencing, gates and trees, and threatened to continue such trespasses, and prayed that defendant be permanently enjoined from further such trespasses. Defendant filed his answer, denying the material allegations of the bill, and, by cross-bill, alleged, in effect, that the land in question consisted of Fourth Street of a subdivision, shown on a map duly recorded, and in which subdivision defendant then owned a number of lots, acquired by him by virtue of certain deeds, and prayed that plaintiffs be required to remove certain obstructions from Fourth Street, and enjoined from closing the street or obstructing the use thereof. The court refused plaintiffs any relief and, pursuant to the prayer of the cross-bill, mandatorily directed that they remove certain obstructions from Fourth Street, or, in the alternative, restore the grade of Fourth Street, and enjoined plaintiffs from "closing said Fourth Street to vehicular traffic and from obstructing the free flow of traffic across and along said Fourth Street".

Plaintiffs' predecessors in title, about 1945, subdivided into lots, streets and alleys, a part of a tract of land of 143.57 acres, calling the subdivision Wolf Creek Gardens. The subdivision contained ninety five lots. A map or plat of the subdivision was recorded in the office of the Clerk of the County Court of Fayette County. The subdivision is not within any incorporated area, and no public authority has exercised any right or control over Fourth Street, or in any manner accepted dedication thereof. Subsequent to the recording of the map, a number of lots were sold and conveyed to various purchasers, including Lots 75, 76, 77, 78, 79, 80, 93, 94 and 95, to defendant. Each of the deeds to the various purchasers, including defendant, described the lot or lots thereby conveyed by reference to the recorded map, and contained this further provision or grant: "* * * together with the right to use in common with other owners of lots, streets, alleys and ways, as shown on said map * * *".

Fourth Street intersects Fifth Street at the southwesterly boundary line of the subdivision, near a public road, and extends northwesterly to the northern boundary line of the subdivision. Fifth Street extends from that intersection, in a somewhat semicircular manner, through a portion of the subdivision until it again intersects Fourth Street near the point where Fourth Street reaches the northwesterly boundary line of the subdivision. Fifth Street extends to a public road, and appears to be the shortest, if not the only practical, way to any public road from the lots situated in that portion of the subdivision here material. Lot 75 is the only lot in the subdivision owned by defendant which abuts on Fourth Street. It also abuts on Fifth Street. Defendant has unobstructed access to Fifth Street, from each of his lots to the nearest public road.

Defendant uses the lots owned by him in connection with the operation of the Fayette Airport, operated by him. It is his contention that by his purchase of the lots in the subdivision, especially by the terms or lan-

guage of the grant, he acquired an unlimited right to have open, unobstructed and unlimited use of all the streets and ways shown on the recorded map of the subdivision, and especially the use of Fourth Street, and that such use is needed in connection with the operation of the airport and is of substantial value to his lots, and to his operation of the airport.

Except as to three lots, not involved in this proceeding, and Lot 75, owned by defendant, plaintiffs now own the remaining twenty six lots fronting on Fourth Street, and own other lots adjacent to those fronting on Fourth Street. On some of these lots plaintiffs, or their predecessors, have, since the conveyance to defendant, constructed a barn, a lodge, fences, gates and two farm ponds, and, since such construction, have used such lots and a portion of Fourth Street for farm and recreational purposes. Some of the fences and gates, and one of the ponds, extend across Fourth Street. The other pond extends into that street to such an extent as to materially interfere with any vehicular use thereof. These are the obstructions complained of. They are approximately eleven hundred feet northwesterly from Lot 75, or in a direction away from the public road. They do not interfere with travel directly from any portion of any lot owned by defendant to the public road, and have remained on or over Fourth Street since about 1952. Plaintiffs contend that the owners of the subdivision have abandoned that part of the subdivision plan consisting of the lots owned by them abutting on Fourth Street and certain other adjacent lots, and have reconverted the same, and the adjacent part of Fourth Street, to private use, and that such abandonment entitles them to close Fourth Street; that the use of Fourth Street by defendant is not needed, or of value to defendant in connection with the ownership of the lots purchased by him; and that the closing of Fourth Street violates no right of defendant as to such ownership.

In denying relief to the plaintiffs, the trial court necessarily found that there existed no effective abandonment

by the plaintiffs, or predecessors, such as would justify the closing by them of Fourth Street. Assuming, not deciding, that such an abandonment may be made in the circumstances of such a grant of an easement or way through or over a subdivision, where no public acceptance is involved, we think the finding amply supported by the evidence. There is no doubt that plaintiffs have used a portion of the lots of the subdivision, and a part of Fourth Street, for farming purposes since 1952. It is just as clear, however, that defendant has continually protested and complained as to such use, and has not acquiesced therein. A large portion of Fourth Street is not included within the enclosures of plaintiffs, and it is not made certain that no right of use by defendant, or value to his purchases, will be affected by the closing of Fourth Street. This, of course, is not to intimate here that such an abandonment can not be effected in any circumstance, by actions of the subdivider only. That question, and other questions briefed, should not be decided until pertinent to a decision. See, however, *Rose* v. *Fisher,* 130 W. Va. 53, 42 S. E. 2d 249; *Deitz* v. *Johnson,* 121 W. Va. 711, 6 S. E. 2d 231; *Mason* v. *Wall,* 96 W. Va. 461, 123 S. E. 457; *Rudolph* v. *Glendale Improvement Co.,* 103 W. Va. 81, 137 S. E. 349; *Flaherty* v. *Fleming,* 58 W. Va. 669, 52 S. E. 857, 3 L. R. A., N. S., 461; *Cook* v. *Totten,* 49 W. Va. 177, 38 S. E. 491, 87 Am. St. Rep. 792; Annotation, 7 A. L. R. 2d 607. The holding that plaintiffs are not entitled to the relief prayed for, however, does not necessarily mean that the defendant is entitled to a mandatory injunction requiring the removal of the obstructions on Fourth Street.

In *Chafin* v. *The Gay Coal & Coke Co.,* 109 W. Va. 453, 458, 156 S. E. 47, this Court said: "* * * Generally, injunctive relief will not be granted unless the injury is irreparable in its nature, unless there is some other ground of equity. Vol. 5, Michie's Digest 708. But without discussing that principle as applicable here, we prefer to apply another principle of equity which controls the cause. Injunction is an extraordinary remedy, and

to award it, a stronger and higher ground must be shown than is required for ordinary relief. When this extraordinary writ is asked for enforcement of a right respecting an easement, equity will consider the relative expense and inconvenience, to which the parties would be put, and deny it if there is a great disproportion against the defendant. If the issuance of the writ will operate oppressively or inequitably, the writ will be denied. 14 R. C. L., p. 357, par. 60. Equities must be balanced. And if the injury done to a servitude by grant is capable of being ascertained and compensated at law, and inconvenience and loss to the other party would be serious, generally, the bill will be dismissed, reserving to plaintiff his right to proceed at law. *Berkeley* v. *Smith*, 27 Grat. 892. Each case must be decided upon its own circumstances, and it rests in the discretion of the court whether a mandatory injunction shall issue. See *Mason* v. *Wall*, 96 W. Va. 461, 123 S. E. 456; *Lake Erie* v. *Essington*, (Ind.) 60 N. E. 457; *Green* v. *Richmond*, 155 Mass. 188; *Georke Co.* v. *Wadsworth*, 73 N. J. Eq. 448 * * *". See *Beard* v. *Coal River Collieries*, 103 W. Va. 240, 137 S. E. 7.

In *Backus* v. *Abbott*, 136 W. Va. 891, 901, 69 S. E. 2d 48, this Court quoted with approval from the opinion of *Lyle* v. *City of Chicago*, 357 Ill. 41, 191 N. E. 255, 93 A. L. R. 1492, as follows: "The mandatory injunction is recognized as an extraordinary remedial process, which is granted, not as a matter of right, but in the exercise of a sound judicial discretion. *Morrison* v. *Work*, 266 U. S. 481, 45 S. Ct. 149, 69 L. Ed. 394. It is most frequently found in cases of nuisance, trespass, and the protection of easements * * * It is a writ not regarded with judicial favor, and is used only with caution in cases of great necessity. 14 R. C. L. 317, and cases there cited. It will never be granted if there is an adequate remedy at law. *Potts* v. *Hollon*, 177 U. S. 369, 20 S. Ct. 654, 44 L. Ed. 808."

In *Lamp* v. *Locke*, 89 W. Va. 138, 108 S. E. 889, it is held: "1. Relief by mandatory injunction will be given only where the right of the applicant is clear and the

necessity urgent." See *McCausland* v. *Jarrell*, 136 W. Va. 569, 68 S. E. 2d 729; *Kennedy* v. *Klammar*, 104 W. Va. 198, 139 S. E. 713; *Mullens* v. *Virginian Railway Co.*, 96 W. Va. 465, 123 S. E. 287.

From the evidence adduced, and the authorities cited, it is clear that there existed no urgent necessity for the mandatory injunctive relief prayed for by defendant in his cross-bill, and that the denial thereof will not cause him irreparable injury. The evidence establishes that little, if any, use of that part of Fourth Street obstructed has been made by defendant, or by any person or persons other than plaintiffs and their predecessors in title, since the conveyance to defendant of lots in the subdivision. No substantial need for such use by defendant is clearly shown to exist at the present time. His shortest and only practical travel way to any public road is over Fifth Street, which is the way used by defendant and those traveling to or from the lots owned by him. We have not failed to consider defendant's contention to the effect that Fourth Street may possibly be needed for the purpose of quickly reaching persons injured through the falling of airplanes using the airport of defendant, but we think such possible need is too speculative or uncertain to require the granting of mandatory injunctive relief. The unused and unimproved condition of that street since 1952 clearly establishes, we think, no urgent need for such use.

Since equity has no jurisdiction to grant any relief prayed for, it necessarily follows that it will not retain jurisdiction of the cause for the purpose of determining or decreeing damages to defendant. See *King* v. *Meabon*, 128 W. Va. 263, 36 S. E. 2d 211; *Wyoming Coal Sales Co.* v. *Smith-Pocahontas Coal Co.*, 105 W. Va. 610, 144 S. E. 410, 62 A. L. R. 740; *Carlsbad Mfg. Co.* v. *Kelley*, 84 W. Va. 190, 100 S. E. 65.

The final decree of the Circuit Court of Fayette County is reversed, and the bill of complaint and the cross-bill are dismissed, without prejudice to the parties, or any of

them, to prosecute any appropriate proceeding at law involving any claim for damages.

*Reversed; bill of complaint and cross-bill dismissed.*