# WHEELING.

## SPRINGER v. McINTIRE.

### July 21, 1876.

'1876.
June Term.

A large tract of land is divided, by order of a court of chancery, into various subdivision, with roads or rights of way, laid out on the plat made by a surveyor under the order of the court, running between certain of these subdivisions to other subdivisions—HELD:

That the purchaser of the subdivision, to which such right of way runs, and to whom such subdivision has been conveyed, by deed, with the privileges, rights of way and appurtenances to the same belonging and appertaining, as specified in the report of said surveyor on file, without restriction as to such right of way, has an easement in such right of way for the benefit of such subdivision, for general purposes; but that he has no right to charge such easement with service to another subdivision, to which such right of way does not extend; although such other subdivision is a part of such large tract of land.

Appeal from a decree of the circuit court of Ohio county rendered on the seventh day of January, 1876, granted on the petition of Abner Key.

The complainants were Levi B. Springer and others, whose names do not appear in the printed record, and the respondents, Shepherd McIntyre and others, whose names do not appear in the printed record.

The controversy in this case arose out of the filing of a petition by the said Key, wherein he alleged his purchase of a certain lot, at a sale had under a decree in the above suit, and by virtue of such purchase acquired a certain right of way, and certain easements, which he

asked might be firmly established and protected by the court. The relief sought by the petitioner was resisted by Benjamin Springer and Joseph Bentley, who were also purchasers at said sale.

The material facts are fully set forth in the opinion of the Court.

The Hon. Thayer Melvin, Judge of said circuit court, presided at the trial below.

*J. E. McKennon* and *Elbridge G. Cracraft* for the appellant.

*Hubbard & Erskine* for the appellees.

EDMISTON JUDGE:

It appears that Moses Shepherd, in his lifetime, was the owner of a valuable tract of land in Ohio county, on Wheeling creek, that he made a will disposing thereof, which will, after his death, was duly probated. A suit was instituted in the circuit court for partition, according to the rights of the parties under the will; and such proceedings were had, as resulted in a decree for a sale of the land on the ground that " the interests of those who were entitled to the subject, or its proceeds, would be promoted by a sale of the entire subject." Before the sale was decreed, the court appointed James Gilchrist, a commissioner for the purpose, and directed him to survey and divide the land into such convenient lots or parcels as, in his judgment, would make the same produce the best and highest price at any sale thereof that might be decreed. This duty was performed by said Gilchrist, and he reported to the court a plat of the survey and division, particularly specifying the boundaries of each subdivision, which was marked " Subdivisions of the Shepherd estate as surveyed by James Gilchrist, under an order of the circuit court of Ohio county, W. Va., dated May 7, 1868." In this subdivision there were many lots, marked A. B. C. D. E. F. G. H. I. K. L. M. N. O. P. Q. R. S. T. U. V. W. He recom-

mended the coal, underlying all the lots except A. and B. should be divided into four lots numbered 1, 2, 3, and 4, by certain lines, and that the coal should be sold separate from the surface; and one acre should be taken from each of the subdivisions C., K., R., and T. for a coal shaft or entry lot to these four coal fields respectively. This report, and all the subdivisions, were approved of by the court, and a sale decreed accordingly. He reports to the court that, in making these subdivisions, that he had laid out certain "roads or rights of way" shown in a certain way on said plat. Lots N. and P. commenced on the "National road," which runs through the front part of the property. Then M. adjoins south of N., and Q. south of P. K. and R. adjoin still further south of Q. In lot K. is one acre set apart as a coal shaft or entry lot to coal lot No. 2., and is embraced by the exterior lines of lot K. From the "National Road" to this acre called the coal shaft, or entry lot to coal lot No. 2, a road, or right of way, is marked on said plat, between "N" and "P." and "M" and "Q.," and terminates on the front line of said acre lot, not reaching the ground sold as lot "K."

It appears that Benjamin Springer purchased at said sale, lot N., and that Joseph Bently purchased lot P.; that Abner Key purchased lot K. and coal lot No. 2, and the one acre set apart as the coal shaft or entry lot to coal field No. 2. These sales were all confirmed, and a deed was made by the commissioners to Abner Key for lots K. and R. and the coal shaft or entry lot to coal lot No. 2, as well as the entry lot to coal lot No. 3, all of which he had purchased. I might state that there is a road or right of way laid down and marked on said plat, along the dividing line between subdivisions Q. and R. and coal lot No. 3, extending up to K. In the deed executed by Lamb and List, the commissioners who sold the land, and who were directed to convey to Key the lands he purchased, this language is used by them; "Now, therefore, this deed witnesseth, that the said Daniel C.

1876.
June Term.

Springer
v.
McIntyre.

List and Daniel Lamb, special commissioners aforesaid, have this day granted and conveyed unto the party of the second part, the following real estate, situated in the county of Ohio—that is to say, subdivisions K. and R.; also the coal shaft or entry lots (containing one acre each) to coal fields numbered two and three, together with all the coal in said coal fields numbered two and three, and the privileges, rights of way and appurtenances to the same belonging or pertaining, as specified in the report and plat returned by James Gilchrist, surveyor, and on file in the papers of said cause, being part of the home plantation or estate mentioned in the ninth clause of the will of Moses Shepherd, deceased, an accurate plat whereof, showing the lines of the several divisions, lots and coal fields as the same were sold by said commissioners, has been by them, pursuant to the said decrees, acknowledged for record in the recorder's office of the said county of Ohio; to have and to hold, etc., etc."

Abner Key desiring to open and use the road or right of way extending from the National Road, to the coal shaft or entry lot to coal lot No. 2, and running along the dividing line between subdivision N. and P., and the dividing lines between M. and Q., to the one acre lot adjoining subdivision K., and claiming that he had a right to use it as a way for general purposes to subdivision K., was obstructed in his effort so to open said way, by said Springer, owner of subdivision N., and Bently, owner of subdivision P. They claimed that his object was to use said way to subdivision K when in fact he had no such right; that the extent of his right was to use it for coal purposes for coal field No. 2, and hence they interposed objections and obstructions to his opening said road way; unless he would avow his purpose to be to operate in the coal field for coal purposes. This he did not claim to be his purpose.

Under this state of facts, Key filed his petition in the circuit court of Ohio county, setting forth his several

purchases, his compliance with the terms of the sale and of the execution of the deed to him by the commissioners, and, also, showing the property purchased by Springer and Bently ; and alleges that when he undertook to open said road to the coal shaft, or entry lot to coal field No. 2, and to subdivision K, as he lawfully might do, he was prevented by them from so doing.   He therefore prays the court to declare his rights in the premises, and to enjoin and inhibit the said Springer and Bently, and their agents and all persons acting under them from interfering with him in the premises.

Springer  and Bently, as already stated, denied the right to open the road for the use of lot K, and alleged that the only purpose of Key was to use the road for the benefit of sub-division K, but did not deny his right to open the way to coal field number 2, if he desired to operate said coal field ; but the petitioner, Key, conceded that he did not intend to operate in coal at the present time, but perhaps might at some future time, if he found it would justify him to do so.   During the pendency of this petition, the parties took the depositions of many witnesses as to what was the understanding in regard to these roads or rights of way at the time of the sale, and as to what was said by the commissioners and auctioneer at the sale.   This evidence is very conflicting and throws but little light upon the matter, if it were proper to look to it as a means of passing upon the rights of the parties to this controversy.   I think the weight of that testimony is to the effect that the sale was made according to the plat of Gilchrist, and the purchasers were referred to it for information, many copies of which were present for inspection by the public.   Mr. Lamb states in his deposition, that he stated to the people at the sale, that the purchasers would be entitled to the use of the roads as laid down on the map by which they sold ; that he thinks he stated this to Mr. Key ; and he had a distinct impression that the commissioners had no right, nor was

it the intent of the decree, to restrict the use of any parcel of land to any one particular purpose. This opinion (he says) he may have given to Key in relation to the "coal entry lots." He further testifies that he did not announce, or authorize any one to announce or state to the bidders, that the use of any of the roads laid out on the map was to be limited or restricted to any particular purpose; that his opinion was that the purchasers would not be so restricted, in the use of the road, to any particular purpose. On this state of the proceedings and facts, the application came on to be heard in the circuit court, when that court ordered and decreed that the said petition of said Abner Key be dismissed at his costs. This decree comes here for review.

No reasons are assigned showing the ground on which the court based this decree; and we are somewhat at a loss to devise the reasons that operated to produce a simple dismissal of the petition. It cannot be doubted, but the court had ample jurisdiction to declare the rights of the parties. This was not claimed at the bar in this Court. It may have been because the court considered that as Key was claiming a greater privilege than the circuit court thought him entitled to, that he thereby forfeited such right as he had. We think that position cannot be maintained, because, conceding the use to be greater than the party was entitled to, even that actual use does not forfeit the right, but the party shall have his action of trespass. *Mendell v. Delano*, 7 Metc. 176, where Wilde, Judge, says "By a wrongful use, a party does not forfeit his legal rights, but is responsible only for damages." Many other authorities to the like effect might be cited. Now if an actual abuse of the right cannot operate as a forfeiture, it seems to me, that it would be difficult to prove that a mere unfounded, or excessive, claim of right should have that effect. I think that the deed made by the commissioners to Key, did grant and convey to him the fee simple title to the one acre of ground "called the coal shaft or entry lot" num-

26

ber 2, to coal field number 2, with the right of way ex-
tending from the Cumberland or National Road, along
the dividing lines, between sub-divisions N and P, and
the dividing lines between sub-divisions M and Q, to the
said one acre lot. And this was a right of way for gen-
eral purposes, and was not restricted to any particular
purpose or use. When we look to the deed, made in pur-
suance of the several decrees of the court, we find the
grant without limit or restriction. If we even endeavor
to aid its terms by the parol testimony, which I do not
see we could do, without violating well settled legal prin-
ciples, it seems to me that the evidence, most to be relied
on, sustains and supports the provisions of the deed.
With this express, unqualified and unrestricted right
granted by the deed, I do not see how, this or any other
court, can add such a restriction thereto as is claimed
should be done in this case. That claim is, that it should
be held that the right of way granted, was only that it
might be used in the event the said Key operated for
coal purposes ; that he has no right to use it for any oth-
er purpose, although such use might be less injurious to
the land of the defendant. I cannot concur in this view
of the case. On the contrary, I think this was a grant
of right of way for general purposes, and was without re-
striction or limitation, so far as the lot of one acre of land
called "coal shaft or entry lot number 2," is concerned.
The owner of land in fee simple, has a right to use it for
any and all legitimate purposes, taking care, only, not,
thereby, to injure any other person impropely. There-
fore it follows that Key would have a right to reside on
this lot, or to cultivate the surface thereof in the produc-
tion of grain or vegetables, or any production to which
it is adapted, and that it cannot be said, with show of au-
thority, that he must be controlled in its use to any par-
ticular purpose, when owned and held under a deed with-
out any such restriction contained therein, as that claim-
ed. I doubt if it would be competent for a grantor to
convey, in fee simple, an estate, with a limitation that it

should only be used for a certain purpose. It is true he may limit and instruct the use of the right of way as he pleases, but that is wholly different from an attempted restriction in the use of the land, that he conveys in fee simple.

But the petitioner, Key, claims that this right extends equally to sub-division K. This is certainly what is called an easement in favor of his lot number 2, and a charge upon the sub-divisions N. and P. and M. and Q. He cannot claim the right to increase this burden or charge upon these servient lots or sub-divisions, which was made for the benefit of one, so as to increase them by serving another lot or sub-division. On this proposition there is a concurrence and agreement in the authorities, to a uniformity that is seldom met with, in difficult legal questions. *Allen v. Gomme and Darvell*, 39 E. C. L., 215; *Henning v. Burnet*, 8 Exch., 187; *Atkins v. Boardman*, 2 Metc. 457; *Mendell v. Delano*, 7 Metc., 176, 8 Ired. (N. C.) 190, Wash. on Easements—and many other authorities, might be referred to, all concurring in this doctrine. In *Allan v. Gomme*, Lord Denman, C. J., says, on page 221: "It has been *held* that if a man has a right of way to a close called A. he cannot justify using the way to go to A, and from thence to another close of his own adjoining to A., and refers to 1 Rolle's Abridgement, Chemin Private (A.) pl., 3 p. 391; *Howell v. King*, 1 Mod., 190; *Lawton v. Ward*, 1 Ld. Raym.; S.C. 1 Lut. 111. In *French v. Marston*, 4 Fost., (24 N. H. 440) Judge Bell says: "No question is made that the grantee of a way is limited to use his way for the purposes and in the manner specified in his grant. He cannot go out of the limits of his way, nor use it to go to *any other place* than that described, nor to that place for any other purpose than that specified, if the use in this respect is restricted. The grantor has a right to limit his grant in any way he chooses, and the grantee takes the way, subject to all the restrictions the grantor

has imposed, and cannot go beyond them without becoming a trespasser."

From this current of authority, all agreeing, I am of opinion that while the petitioner has an unrestricted right of way to the "coal shaft or entry lot of one acre, to coal field number 2, "he has no right to extend that right to sub-division K., because he would .thereby increase the charge upon the servient lots, sub-divisions N. and P., to the prejudice of the owners thereof. But that as he has not actually transcended his rights, he has not forfeited them, by an improper claim as to the extent thereof.

I am therefore of opinion that the decree of the circuit court is erroneous, and the same be reversed and annulled with costs to the appellant.

The following is the decree entered in this Court :

And this Court proceeding to render such decree as the circuit court should have rendered, doth adjudge and order and decree that the said Abner Key has a right of way granted to him by the deed executed by Daniel C. List and Daniel Lamb, Special Commissioners, appointed by a decree of the circuit court of Ohio county rendered in the cause of Levi B. Springer and others, complainants against Shepherd McIntyre and others, defendants in said court, which deed bears date on the nineteenth day of May, 1870, and is of record in Ohio county; which road leads from the "Cumberland" or "National Road" along the dividing line between sub-division N., now owned by Benjamin Springer, and sub-division P., now owned by Joseph Bently and along the dividing line of sub-divisions M. and Q. to the coal shaft or entry lot number 2 to coal field number 2. And it is further ordered, adjudged and decreed that said right of way is for general purposes, and subject to no restriction as to the use of said "coal shaft or entry lot of one acre number 2, to coal field number 2."

But this Court doth further adjudge, order and decree

that the said Abner Key has no right to charge said right of way with service for the benefit of his subdivision K.

1876.
June Term.

Springer
v.
McIntyre.

It is therefore further adjudged, ordered and decreed that the said Benjamin Springer and Joseph Bently, and each of them, their agents and servants, and all . other persons acting under them or either of them, be, and they, and each of them, are enjoined and inhibited from interfering or obstructing the said Abner Key and his agents, from opening the said road as herein set forth and described, for the purposes herein declared; said road to be of the width and character as designated on the plat of surveyor James Gilchrist.

And it is further adjudged, ordered and decreed that Benjamin Springer and Joseph Bently do· pay, to the said Abner Key, his costs expended in the prosecution of his said petition in the ·circuit court, with leave to sue out execution thereon.

The other Judges concurred.

DECREE REVERSED AND CORRECTED IN THIS COURT.