## THE GEORKE COMPANY

*v.*

## FRANK WADSWORTH.

[Decided November 15th, 1907.]

1. A right of way, which had never existed as such prior to a sublease over the sublessor's remaining premises, was not created by, and did not pass by, the grant of "appurtenances" in the sublease.

2. On the execution of a sublease of the upper floors of a building, a right of way to the floors so severed, as a way of necessity, may pass by implication of law without the use of the word "appurtenances."

3. Where a sublease of the upper floors of a building expressly provided for other means of access than an open stairway leading from the first floor, the sublessee's right to use such stairway to obtain access to the upper floors did not pass by implication of law as a way of necessity, under the rule that an easement by implication of law is raised in the absence of any express contract in reference thereto.

4. Where a sublease of the upper floors of a building provided for new means of access other than by a stairway leading from the first floor, the fact that the sublease also provided that if the sublessee was unable to procure the consent of the original landlords to the construction of such new means of access, or it could not be constructed for any other reason, the sublessee might surrender the lease, did not render such new means of access substitutional only so as to raise an easement for the use of the stairway by implication in case the new way was not obtained.

5. When a sublease of the upper floors of a store building was made to plaintiff, access thereto was obtainable only by an open stairway leading from the first floor store. The sublease contemplated access by means of bridges over an alley, connecting such upper floors with plaintiff's other adjoining places of business, and contained no provision authorizing plaintiff to use the stairway. Prior to the beginning of the term, plaintiff, in the construction of such new way, shut up the stairway entrance at the second floor by flooring, after which defendant took down the stairway and constructed permanent fixtures across and beyond the place previously occupied by it.—*Held*, that on complainant's failure to obtain the new mode of access contemplated by the sublease, it was not entitled to a mandatory injunction to compel defendant to replace the stairway and permit plaintiff's use thereof by customers through defendant's store as a means of access to the subleased premises.

On bill for injunction. Heard on bill, answer, replication and proofs.

Defendant, the lessee and occupant of an entire four-story building, on August 7th, 1902, leased to the complainant "the second, third and fourth floors of the four-story brick building No. 157 Market street, with the appurtenances," from October 1st, 1902, until April 1st, 1909, for the yearly rent of $1,200, payable in equal monthly installments, monthly, in advance. At the time of the lease there was no common hall or stairway leading to any of the upper stories so leased, and the only access to the second story was by an open stairway in the first story along the east wall to the second story. In the second and third stories there were also stairways leading from each floor to the floor above. This stairway, from the first to the second story, began about forty feet from the front of the first story, and was about three and one-half feet wide. From a landing at the foot of the stairway there was access to the stairway in two ways; on one side, from a door leading into an alley about twelve feet wide, called Wilbur's alley, which ran along the entire east side of the building, and on the other side of the landing the access was directly from and to the room on the first floor, which was occupied by defendant as an ice cream parlor and confectionery. Previous to the defendant's lease, and up to the time of his lease to complainant, it does not appear that the occupation or use of the upper stories had ever been severed from that of the first floor. Complainant, at the time of the lease, occupied a three or four-story building on the east side of the alley, and also an adjoining building west of the leased premises, in which buildings they carried on a large department store, and the main, if not the only, purpose of complainant in renting the upper floors, was to connect the floors of its buildings on either side, with those of the leased premises, by means of new openings in the west wall of the leased premises, and also by new openings in the east wall, and bridges across the alley, connecting the floors of the buildings on the opposite sides of the alley. The original lease from the owners to Wadsworth, the defendant, contained a covenant on Wadsworth's part, not to cut through the walls of the building or make any alteration without the written consent of his lessors. At the time of complainant's lease no such consent had been given. And in reference to the subject of

the proposed alteration and the use of the upper stories in connection with its other buildings, the lease between the parties to this suit contained the following provisions:

"And it is further agreed between the parties hereto that, whereas, the said the Georke Company is the lessee or owner or occupants of divers premises adjoining the premises hereinabove demised, and also of other premises to the east of the premises hereby demised and separated therefrom by a certain street known as Wilbur's alley.

"And whereas, it is the intention of the Georke Company to use the said premises in connection with the other premises above mentioned leased, occupied and owned by it, and for that purpose to connect the premises herein demised with the premises aforesaid by means of bridges or other means or methods of connection.

"Now, therefore, it is agreed between the parties hereto that for the purpose of making said connections or communications between the demised premises and the other premises leased, used or occupied by the said the Georke Company, the said the Georke Company take such possession of the premises herein demised before the aforesaid first day of October, nineteen hundred and two, as may be necessary for the said Georke Company to have for the purpose of making the aforesaid connections or communications, so that the same may be completed before the said first day of October, and in the event that the said the Georke Company shall take possession of the premises aforesaid prior to the first day of October, nineteen hundred and two, then the said Georke Company shall, at its own expense, move the property of the said party of the first part from the said demised premises to one hundred and fifty-one Market street, in the city of Newark.

"And it is further agreed between the parties hereto that, whereas divers questions may arise in making the connections or communications in the last preceding clause referred to between the premises herein demised and the premises now leased, occupied and owned by the Georke Company, if the said the Georke Company shall fail to secure consent according to the terms of said lease, or if for any reason the said the Georke Company shall be unable to make the said connections and communications, then, at the option of the said the Georke Company, its successors and assigns, the said the Georke Company may surrender this lease, and, upon the making of said surrender, this indenture of lease and anything herein contained shall cease and terminate, anything hereinbefore to the contrary notwithstanding; and in the event of the terminating of the said lease as aforesaid, if the said the Georke Company shall have taken possession of the said demised premises for the purpose of making the connections and communications in this lease mentioned, and shall have moved the said party of the first part to the premises one hundred and fifty-one Market street, then and in such event the said Georke Company, at its own expense, shall remove the property of the said party of the first part by it theretofore moved and replace the same upon the premises herein demised."

There is no satisfactory evidence that during the negotiations for the lease, and up to the time of its execution, there was any special conversation or communication in reference to the stairway or its use. The Georke Company, about August 27th, 1902, took possession of the premises, and without having obtained any written consent of the owners, cut through the walls of the building upon both sides, and by bridges over the alley connected the upper stories of the leased building with the upper stories of their building east of the alley. As the bridges were thrown across, complainant floored over the opening in the floor of the second story of the leased building made for the stairway, by a temporary flooring, and access to the second floor of said building was by its other buildings.

Subsequently, and within three or four weeks, a permanent floor, on beams, was laid across the opening. The stairways to the third and fourth stories seem to have been removed also by the complainant as part of the method of use of the premises in connection with their other buildings. What use, if any, was made by the complainant of the stairway from the first floor before it was covered over by it, does not appear, but as the entrance on the premises before October 1st, when the term commenced, was only permitted for the purpose of making the alterations, and was permitted without paying any rent for the occupation, it was probably as well as legally, only used in connection with the egress and ingress for that purpose. After complainant had closed the stairway opening temporarily by the floor, the defendant took down the stairway, removing, as necessary for this, the balustrade or railing in the second story around the opening, and then sealed up the ceiling of the first story. Whether the stairway was removed before the complainant's permanent flooring, does not clearly appear, but the connections of complainant's buildings were completed and the stairway removed before the commencement of the term under the lease. Mr. Georke, the president of the complainant company, swears that in August or September, 1902, he notified defendant not to take the stairway down; that while they would not use it at once, they wanted it to get in and out of the premises if they should require it. As to a conversation in which notice was

given to defendant that he (Georke) wanted the stairway, he is corroborated by one of the superintendents of the company, who says it took place at the time the stairway was being removed. The defendant, however, denies that any such notice was given. At or about the time when the breaking of the walls for the purpose of making the connections was commenced (August 25th, 1902), defendant gave notice, in writing, to complainant not to cut any openings in the outer walls on penalty of being held responsible for damages ensuing by reason thereof, but took no other proceedings. The owners having given no written consent to the making of these openings, on October 10th, 1902, filed a bill, against both defendant and complainant, to enjoin further alteration and to compel restoration, as being violations of the covenants in the lease, and a waste of the premises. *Peer v. Wadsworth, 67 N. J. Eq. (1 Robb.) 191.* Complainant in this suit set up a parol consent of the owners, or one of them, as a defence, but this defence was not sustained, and by a final decree in the suit, dated October 21st, 1904, both the complainant and defendant were enjoined from further cutting openings in the walls without written consent, and were required to restore the premises to their original condition. An appeal, taken by complainant, was dismissed for want of prosecution, at the March term, 1905. Pending the suit and the appeal, the issuing of an injunction had been stayed on complainant's giving bonds to the lessors, and during the whole of that time and up to June 22d, 1905, when the injunction was served, the premises leased had been used in connection with the other buildings of the complainant, through which alone access to the leased premises was had. During the pendency of this suit by Wadsworth's lessor, complainant's solicitor, by a letter dated April 11th, 1903, notified defendant that the defendant had recently deprived the company of the stairway and hatchway which it had hitherto used, and demanded immediate restoration of said hatchway and stairway, and by letter dated June 12th, 1903, again protested against removing the stairway leading from the alley to the upper floors and demanded the immediate restoration of the stairway to avoid legal proceedings. Upon the service of the injunction, complainant removed the bridges, filled up the openings in the walls

on both sides, and formally notified defendant, in writing, that compliance therewith deprived the company of an access to or exit from the premises, and that he should forthwith provide some convenient or appropriate access to the premises rented. Defendant failing to restore the stairway or provide some other ingress or egress, the complainant files this bill for a mandatory injunction to restore the stairway or provide some other ingress or egress. Complainant had not, at the time of filing the bill, or up to the time of the hearing, removed the permanent flooring put down by it, over the hatchway, and defendant, since the removal of the stairway, has, at considerable expense, located fixtures of a somewhat permanent character across and beyond the place occupied by the stairway, and has, in some other respects, changed the use of the first floor for his business.

The bill prayed the alternative relief of a restoration of the stairway or the provision of another way in lieu thereof, but the contention of complainant's counsel at the hearing was for the restoration of the stairway, and this was put upon the ground that by the lease, the stairway passed as an "appurtenance" to the upper stories, and by the express demise of the upper stories "with the appurtenances." The claim for alternative relief was not referred to at the hearing.

*Messrs. Hood & Hood,* for the complainant.

*Messrs. Lambert & Stewart,* for the defendant.

EMERY, V. C. (after statement).

A right of way which had never existed as such previously to the lease, and over the remaining premises of the lessor, is not created by and cannot pass under the general word "appurtenances" in the lease. *Stuyvesant* v. *Woodruff, 21 N. J. Law (1 Zab.) 133 (Supreme Court, 1847)*; *Fetters* v. *Humphreys, 19 N. J. Eq. (4 C. E. Gr.) 475, 476 (Court of Errors and Appeals, 1868)*; *Hazeldine* v. *McVey, 67 N. J. Eq. (1 Robb.) 275, 277 (Vice-Chancellor Stevens, 1904)*. On severance of the premises, it may, as a way of necessity, pass with the lease of a portion of the premises, by implication of law, as appurtenant to the

premises, without the use of the word "appurtenances." *Fetters* v. *Humphreys, supra; Newhoff* v. *Mayo, 48 N. J. Eq.* (*3 Dick.*) *619, 624* (*Court of Errors and Appeals, 1891*). An easement by implication of law is raised in the absence of any express contract in reference to the easement, and the question in this case relates to the effect of the express provisions in the lease as to another means of access, upon the easement which would have been raised by implication of law, had no contract for other access been made. The maxim of construction *expressum facit cessare tacitum,* controls the case on this point, and the express contract for another way of access which the lessee had the right to provide, before the commencement of the term, prevents the creation of another easement by implication. Nor can it be considered that because it was contemplated that there might be a failure to procure the proposed new access, the new way was to be substitutional only, and the easement by the stairway was, by implication, to continue subject to the substitution of the new way, or was to revive on its failure. The reason is that the same maxim of construction is again applicable, and the express contract as to the rights of the parties, made in reference to this contingency, also prevents the raising of this implied easement, and prevents the remittal or restoration of the parties to the estates which the law would have implied in the absence of any express contract as to the right of complainant, on the failure of the new access. The provision that the lessee might enter before the term for the purpose of making the new access, and the making of this new access and the closing of the stairway, before the commencement of the term, by permanent flooring, in which both parties joined (the defendant, by removing the balustrade, and the complainant, by making a permanent flooring), shows, I think, that during the term the only access to the premises, in relation to which both parties meant to contract by the lease, was the access contemplated to exist and actually existing when the term was to commence, and not the access when the lease was dated. If the sole question, therefore, were one of complainant's legal right to the use of the stairway, or of a substituted way, other than the one expressly referred to, I should be of opinion that there was no legal right to be protected in equity. But a

court of equity does not usually undertake to settle, in the first instance, questions of doubtful legal right, and the precise question at issue here is the narrower one, whether a mandatory injunction should issue compelling the restoration of the stairway, or whether complainant, for the protection of any legal right it may have to the use of this stairway, should be remitted to an action at law.

A restoration of the stairway and the establishment of complainant's right to use it as it existed at the date of making the lease, would, as it seems to me, carry with it the right to use defendant's store for access to the upper stories for any purpose within complainant's legal rights of occupation under its lease, and would or might seriously affect defendant's business, and his occupation of the first story for the purpose of his business, in a manner not contemplated by the parties at the time of making the lease and fixing the rental. Any new substituted way which complainant would have the right, under its lease, to make, for complainant, would apparently be located wholly within the walls of the first story, and necessitate similar interference with defendant's business. Assuming, therefore, the existence of any such right of substituted way, there would be the same objection to its creation by mandatory injunction. On the whole case, therefore, I conclude that if the complainant, on the failure of the new access, insists upon its right to other protection than that of terminating the lease, and has such additional right, the legal remedy by damages for interference with it, is the remedy to which it should be remitted.

The bill will be dismissed without prejudice to an action at law.