## CHARLESTON.

MARY CHAFIN *v.* THE GAY COAL & COKE COMPANY *et al.*

(No. 6811)

Submitted October 1, 1930.   Decided October 7, 1930.

454

*Livezey, Hogsett & McNeer,* for appellant.

*Chas. L. Estep* and *Fitzpatrick, Brown & Davis,* for appellees.

LIVELY, PRESIDENT:

This controversy is between Mary Chafin, an heir of Moses Mounts, deceased, and Gay Coal & Coke Company, the lessee of Mounts, over the use of the surface of the land leased; in which the heir seeks to enjoin the coal company from using the surface in operating its coal mine under the lease. The trial chancellor refused to enjoin, and dismissed the bill, and Mary Chafin appealed.

Moses Mounts owned a tract of about 850 acres at the junction of Trace Fork and Island Creek in Logan County and in 1903 leased it for coal mining purposes to the predecessors of Gay Coal & Coke Company for a period of thirty years with privilege of renewal for a like term. The lessee was given the usual mining rights, including use of timber, stone, surface for houses, ways, etc., necessary for the successful operation of the lease, but for no other purpose. Shortly after the execution of the lease, the lessee established and now operates a modern coal mine occupying that portion of the surface of the land facing railway transportation, and not prohibited under the lease, with its tipple, ways, miners' houses, store building and the like. It is the use of this part of the surface thus occupied which is involved here. Moses Mounts died a short time after the lease was given, and this land was partitioned among his heirs by decree of November 10, 1905. That part of the land facing the water courses and the common carrier railroad (a portion of which was occupied by the coal company's houses, tipple and ways) was partitioned into nine lots (there being nine children of Moses Mounts) designated on the map of partition as lots Nos. 10 to 19, inclusive, and lot No. 17 was allotted to plaintiff, Mary Chafin. On February 6, 1928, her

MARY CHAFIN
V.S. G.M. CHANCERY
GAY COAL & COKE CO., ET AL.

EXHIBIT NO. 6, FILED
WITH ANSWER OF
GAY COAL & COKE CO.

ISLAND CREEK COAL CO.
TO
MARY CHAFIN
MAR.-30-1917
1750 ACRES

LEASED FROM ISLAND CREEK COAL CO.

ALLEN MOUNTS ESTATE
TO
GAY COAL & COKE CO.
JULY-18-1927
SURFACE ONLY

MOSES MOUNTS & WIFE
TO KATY MOUNTS
JAN - 6 - 1904
ALSO DEEDED TO
KATY MOUNTS
IN PARTITION SUIT NOV.-10-1905

MOSES MOUNTS & WIFE
TO
ALLEN MOUNTS
DEED DATED -JAN- 6-1904
ALSO DEEDED TO
ALLEN MOUNTS
IN PARTITION SUIT. NOV. 10, 1905

MOSES MOUNTS & WIFE
-TO-
ALEXANDER MOUNTS
DEED DATED JAN.- 6 -1904
ALSO DEEDED TO
ALEXANDER MOUNTS
IN PARTITION SUIT NOV. 10-1905
SOLD TO
C.K. ROBERTSON JUNE-15-1907
SOLD TO
A.D. ROBERTSON

Double Chestnut Cor.
Identified by
Dievens & Keenis Mounts

Locust & White Oak, Marked
3 hacks on one side.
Identified by Dievens & Keenis Mounts.

POST CR. M.G. JACKSON
STEAM MILL LOT

Dead Apple Tree

BOTTOM LAND
RESERVED IN DEED
ALEXANDER MOUNTS
TO C.K. ROBERTSON
Identified By Alexander Mounts

RESERVED IN DEED
ALEXANDER MOUNTS
TO C.K. ROBERTSON.

MAP SHOWING
PARTITION OF MOSES MOUNTS ESTATE
IN CHANCERY CAUSE OF
KEENIS F. MOUNTS ETAL V.S. LILLIE MOUNTS ETAL.
Scale 1"-200'                    Sept-26-1928
W.C. McCall, Eng'r.
Logan, W.Va.

husband deeded to her a one-ninth interest in lot No. 11, which he had acquired mediately from Armel Mounts, who was allotted, by the partition decree, Lot No. 11. So, at the time of the institution of this suit, she owned lot No. 17, and, according to her husband's testimony, all of lot No. 11, both subject to the easement of the coal company lease for the purpose of getting out coal from the 850 acre tract. The partition decree described lot No. 17 as ''beginning at a corner of lot No. 16 and with line of same up the hill to the back line of the Moses Mounts estate, and with same up the creek 180 feet, thence down the hill parallel with the lower line to the bottom land and with same to the beginning, containing 3 acres'', subject to the coal lease. Lot No. 11, allotted to Armel Mounts (which plaintiff now claims to own) was also described as beginning at a corner of Rosa Skaggs' (lot No. 10) 3-acre lot, and then follows the calls and distances, and as containing $2\frac{1}{4}$ acres. A photostatic copy of defendants' exhibit No. 6, accepted as correct by plaintiff as to exterior boundaries of the area divided into lots 10 to 19, will visualize the partition of the 850 acres, including that portion of the land included in lots 10 to 19, inclusive; and will visualize the entire controversy.

(See accompanying map).

In 1915, one of the heirs instituted two suits, one to set aside the decree of partition, and the other to set aside a decree or judgment invalidating Moses Mounts' will, and for other purposes not pertinent here. Those suits were compromised among the heirs and an agreement entered into by them, designated on its face as a deed between the heirs, reciting the lease, the death of Mounts, the names of his heirs, the invalidation of his will, the decree of partition, the institution of the two suits, above named, the interest of each heir in the estate, and the present owners of those interests; the fact that the coal company had instituted a suit as stakeholder of accrued royalties in its hands asking for a decree directing to what persons the said royalties should be paid; referring to deeds by which certain persons had acquired certain parts of the partitioned land by purchase from certain of the heirs; and that all the parties interested in the land (by heirship and pur-

chase) desired to compromise their differences; and therefore they had agreed that the decree attacked, which invalidated the will, should stand. They also agreed upon the respective interests of each to the coal underlying the land, and the royalties which should be paid to each; and that the *partition decree should stand,* except to the extent as therein set forth.

All went well until just before the institution of this suit. The land contained three seams of coal, known as the Island Creek, the Draper and the Eagle seams. The Coal Co. from 1905 had been diligently working the Island Creek seam and had about exhausted it; and was contemplating opening the Eagle Seam. But in order to finish taking out the Island Creek coal seam, it became necessary, as a business expediency, to lease and mine the Island Creek seam in an adjoining tract of 151 acres, in order to mix it with the Island Creek coal remaining in the Mounts land, make it sell better on a competitive market, and insure a steadier course of operation of the Mounts lease, at a lesser cost. It seems that the Island Creek coal in the Mounts land remaining unmined was principally in pillars, and the quality mined from pillars, because of pres-. sure of the overlying strata, was not as marketable as the other coal, hence the lump coal from the 151-acre lease mixed with the shattered coal from the pillars made the product sell more readily and at a better price. The 151-acre outlying tract was accordingly leased in 1927, and permission was given the coal company by all those affected, except plaintiff, to operate the 151-acre lease, as above indicated, and bring the product therefrom over and through the Mounts land to the tipple. The haulway is shown on the map. Plaintiff objected, but proffered to sell her interest in the Mounts estate for $40,000.00. The coal company refused to buy at that price; and proceeded to change its haulway so as not to haul over plaintiff's lot No. 17, and located it as now shown on the above map, under and over lots 15, 14 and 13. This injunction suit was then instituted to enjoin defendant from using the Mounts land for the purpose of operating the 151-acre lease. Plaintiff charges that the partition decree of 1905 is void for uncertainty, alleging that it is impossible to locate her lot 17 on the ground from that decree; that the confirmation of that decree by her in the

compromise of 1915 is also void, because the decree itself is void; that therefore she owns an undivided interest in the Mounts land and defendant is trespassing on her by hauling outlying coal over or through any part of that land; but she says that if the decree be not void for uncertainty, then the use of the surface of her said lot 17 and the use of the surface of lot 11, which her husband says she now owns, is a trespass not authorized by the Mounts lease to defendant; and should be enjoined. It will be noted from the lease that the use of the surface is for the purpose only of mining the coal on the Mounts land.

Much argument and citations are contained in the briefs relating to the uncertainty of the partition decree. The trial chancellor found that the location of lots 10 to 19, inclusive, could be located from the descriptions furnished by the commissioners of partition. The commissioners located the lots not only by specific description, as hereinbefore partially set out, but by a map filed and made a part of the partition suit. Engineer McCall had no trouble in making the location on the ground from that data and has done so in the map above, which plaintiff accepts as correct as to exterior boundaries of the area of these lots. As pointed out by the chancellor, due partition had been made 25 years ago and not questioned by anyone during that time. Then, in 1915, plaintiff, by deed confirmed it. She accepted a deed in 1927 from her husband for one-ninth of lot 11, which referred to the partition. Under these circumstances, it would require a strong showing of uncertainty to avoid the decree. Equity regards that as certain which can be made certain. We cannot hold the decree of partition as void. Even if we did so, it would not be controlling of this cause, as will hereafter appear.

It is quite apparent that the use of the surface of plaintiff's lots for the purpose of mining outlying coal is not within the covenants of the lease. Should not that use be enjoined? This is the controlling issue. There is a combined store and office building in small part on lot 17, also two tenements, one occupied by the store clerk and the other by the store manager. A supply track crosses the lower part of lot 11 which lot is against a steep hillside. It cannot be questioned that these

houses and this supply track are there by right, and will remain there by right as long as coal is being taken from the Mounts lease. Plaintiff has no right to remove them or occupy them until the lease expires. Then they revert to her. Her complaint is that an additional burden has been placed on her surface by the use of these houses and the supply track in bringing out the coal from the 151-acre tract. We find testimony from those in charge of the mining operation that the coal in the Mounts lease is being mined as expeditiously as it would have been if the outlying coal had not been mined. This is not controverted. It is questionable if there is any additional servitude on lots 11 and 17. The use complained of cannot be considered as a trespass, for defendant is there by right. On the other hand, plaintiff is benefited by the continuous and successful operation of the mine. "A principle which underlies the use of all easements is that the owner cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon. It is obvious that the application of this rule is largely a question of fact, depending upon the purpose and character of the particular easement and the surrounding circumstances. The cases recognize the doctrine that a material and injurious change may not be made, but that an immaterial change does not affect the easement.'" 9 R. C. L., p. 790, sec. 47, title "Misuser". See 19 C. J., p. 979, sec. 227. Generally, injunctive relief will not be granted unless the injury is irreparable in its. nature, unless there is some other ground of equity. Vol. 5, Michie's Digest 708. But without discussing that principle as applicable here, we prefer to apply another principle of equity which controls the cause. Injunction is an extraordinary remedy, and to award it, a stronger and higher ground must be shown than is required for ordinary relief. When this extraordinary writ is asked for enforcement of a right respecting an easement, equity will consider the relative expense and inconvenience, to which the parties would be put, and deny it if there is a great disproportion against the defendant. If the issuance of the writ will operate oppressively or inequitably, the writ will be denied. 14 R. C. L., p. 357, par. 60. Equities must be balanced. And if the injury done to a

servitude by grant is capable of being ascertained and compensated at law, and inconvenience and loss to the other party would be serious, generally, the bill will be dismissed, reserving to plaintiff his right to proceed at law. *Berkeley* v. *Smith*, 27 Grat. 892. Each case must be decided upon its own circumstances, and it rests in the discretion of the court whether a mandatory injunction shall issue. See *Mason* v. *Wall*, 96 W. Va. 461, 123, S. E. 456; *Lake Erie* v. *Essington*, (Ind.) 60 N. E., 457; *Green* v. *Richmond*, 155 Mass. 188; *Georke Co.* v. *Wadsworth*, 73 N. J. Eq. 448. Can we say the lower court has abused its discretion? To enjoin defendant from bringing its coal from the 151-acre tract through and over the Mounts land to its tipple, simply because of this slight additional servitude on the surface of plaintiff's lot, would occasion serious loss to defendant and would afford plaintiffs very little benefit.

The decree will be modified to the extent only of saving to plaintiff her right to sue at law for damages, and as modified, will be affirmed.

*Modified and affirmed.*