**NATIONAL LEAD COMPANY, a corporation created and existing under the laws of the State of New Jersey, Plaintiff,**

v.

**KANAWHA BLOCK COMPANY, a corporation created and existing under the laws of the State of West Virginia, Defendant.**

Civ. A. No. 2473.

United States District Court
S. D. West Virginia,
Charleston Division.

July 17, 1968.

**358**

James K. Brown, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., for plaintiff.

E. Glenn Robinson, McClintic, James, Wise & Robinson, Charleston, W. Va., for defendant.

## MEMORANDUM OPINION

FIELD, Chief Judge.

This diversity action was instituted by the plaintiff, National Lead Company, a New Jersey corporation (hereinafter referred to as "National"), against the defendant, Kanawha Block Company, a West Virginia corporation (hereinafter referred to as "Kanawha"), and involves a controversy relative to an easement or right of way granted by the plaintiff to the defendant incident to the conveyance of certain real estate. The plaintiff seeks an adjudication that the easement has been terminated in accordance with the provisions of the deed which granted the right of way; an injunction against the further use of the right of way by the defendant; and an order directing the defendant to reconvey the easement or right of way to the plaintiff as provided in said deed. Additionally, the plaintiff asks that the defendant be enjoined from the further use of the easement to serve property owned by the plaintiff but to which such easement is not appurtenant. The case has been submitted to the Court upon the pleadings, certain interrogatories and depositions, a stipulation of facts and issues entered into between counsel for the parties under date of August 20, 1963, and certain evidence taken in open court.

Based upon the foregoing, the facts are found to be and stated as follows. Prior to February 6, 1946, National was the owner of a tract of land of approximately 11 acres situate on the south bank of the Kanawha River opposite the City of Charleston. The only access to this tract from a public road was over certain other property of National located to the northwest of the 11-acre tract.

Under date of February 6, 1946, National conveyed to Kanawha a portion of the 11-acre tract, consisting of approximately 3.9 acres. The tract so conveyed was then unimproved and was acquired by Kanawha for the primary purpose of constructing and operating a plant and other facilities for the manufacture and sale of cinder and concrete blocks and other building materials, and National was fully aware of this proposed use of the property by Kanawha. Kanawha has utilized the property for that purpose up to the present time.

This deed contains the following provisions bearing upon the issues presented in this litigation:

"* * * [T]he party of the second part (Kanawha) shall have the right to build, maintain and use a road eighteen feet wide * * * over and through lands of the party of the

first part (National) * * *. Said road shall be a private road, established and used for the exclusive benefit of the said lands of the party of the first part, and the land of the party of the second part hereby conveyed, and may be used in common by the parties hereto, their successors, assigns and tenants, and by the officers, employees, customers, invitees, visitors and any others doing work for or having business with said parties hereto, their successors, assigns and tenants. * * *.

\* \* \* \* \* \*

"The party of the first part (National) shall have the right at its expense at any time to relocate on its property, said private road from "A" to "C" or any part thereof, so long as the party of the second part (Kanawha) is always given a reasonably direct route for ingress to and egress from its said property.

\* \* \* \* \* \*

"In the event a public road is constructed into or through the property hereby conveyed, all the rights and liabilities of the party of the second part in respect of said private road shall, upon the completion of such public road, cease and terminate and such rights shall revert to the party of the first part, and upon the request of the party of the first part, the party of the second part shall grant and assign to the party of the first part, all its rights, interest and title in and to said private road and every part thereof."

The deed further provided that these covenants and agreements, among others, "are hereby made covenants running with the land hereby conveyed, and with the adjoining lands owned by the party of the first part * * *."

On July 23, 1953, Capitol Block Company, a corporation, conveyed to Kanawha a tract of land containing approximately 2.5 acres which tract was contiguous to the 3.9-acre tract along the entire southeast boundary of the latter tract. This 2.5 acres had originally been a portion of property owned by B. Preiser Company and had been conveyed by Preiser to Capitol by deed dated January 2, 1953.

After acquiring the 2.5-acre tract, Kanawha made certain improvements thereon and proceeded to fill the area with aggregates, broken blocks and waste materials to bring the level of the tract up to the adjacent 3.9 acres. Much of this fill material was transported to the property by trucks which used the private right of way in delivering such material. As the filling of this tract progressed Kanawha used the filled ground for the storage of manufactured blocks as well as raw materials. However, no part of Kanawha's manufacturing plant, office building, weighing scales or sales facilities is located upon the 2.5-acre tract.

In 1956 representatives of the State Road Commission of West Virginia initiated negotiations for acquisition of property along the south side of the Kanawha River extending from a point which is north of the Chesapeake & Ohio Railway station to the Patrick Street bridge. The purpose of the acquisition of this property was the construction of a highway facility identified as State Project No. 2151, Federal Aid Project No. U.317(3). The State Road Commission acting pursuant to the provisions and authority of Chapter 17, Article 4 of the West Virginia Code, designated the project as a controlled-access highway facility. Shortly after January 5, 1956, representatives of Kanawha and National conferred to discuss the impact of this controlled-access highway upon their respective lands, and thereafter representatives of both corporations conferred with personnel of the State Road Commission in regard to the possibility of obtaining access to the proposed highway at a point near the common division line of their respective lands. The agents of the State Road Commission advised both National and Kanawha that the Commission would not permit access to the highway as requested by them.

On January 22, 1957, Kanawha executed a deed conveying to the State of West Virginia a portion of Kanawha's property for construction of the highway. This deed was placed in escrow pending performance by the State of certain obligations thereunder, and was ultimately delivered to the State and recorded on December 23, 1959. The deed released the State from any and all claims for damages to the residue of Kanawha's lands and improvements. However, the deed did contain a reservation of certain rights to Kanawha with respect to the private roadway in the following language:

"(3) The perpetual right to maintain a roadway over and upon a portion of the party of the second part's right of way between Station 26+67.41 and Station 29+30.55, said roadway to occupy only that portion of the party of the second part's right of way lying and being south of a gravity type retaining wall to be constructed by the party of the second part, between the aforementioned stations."

By deed dated May 31, 1958, recorded on December 30, 1958, National also conveyed to the State of West Virginia a portion of its property for the purpose of the construction of the controlled-access highway. The deed indicated that the conveyance was made by National without receiving any payment or consideration therefor and was made as a gift or contribution to the welfare of the community. The deed further stated that the property so conveyed was to be used for a controlled-access facility with no rights of access thereto by abutting owners and National released all easements with respect to the property including rights of vehicular and pedestrian access. By the terms of the deed, National reserved various rights and easements including the following:

"15. The perpetual right to use and maintain a private road between Station 26+67.41 and Station 29+30.55, the said road lying and being south of

a gravity type retaining wall constructed by the party of the second part between the aforementioned stations."

Kanawha's deed to the State of West Virginia did not provide for nor reserve to Kanawha any right or rights of access to the proposed highway, but did reserve various rights and easements for purposes of drainage and loading and docking facilities on the Kanawha River. The deed provided that there was attached thereto and made a part thereof Sheets Nos. 13 and 14 of Project U.317 (3) " * * * showing the approximate location of the drains, sewers, underpass and other facilities above mentioned, * * *." Sheet No. 14 shows as a part of the Project what is known as the Danner Hollow Road, located between the property of Kanawha and B. Preiser Company, leading from the expressway to a crossing over the Chesapeake & Ohio Railway tracks. This Sheet No. 14 shows the location of a driveway or apron leading into Kanawha's property between Stations 2+97.97 and 3+21.97 with a notation thereon "Access Permitted Between These Stations for Future Appr." Between these two stations the State of West Virginia constructed a concrete "apron" leading up to Kanawha's property. However, this "apron" was not constructed at the request of Kanawha nor has it ever been used by Kanawha.

The highway facility was opened for traffic on December 16, 1958. Under date of January 15, 1960, National advised Kanawha that Kanawha's rights in the private road as described in the deed of February 6, 1946, had ceased and terminated and had reverted to National, and requested that Kanawha grant and assign to National all rights, interest and title therein. Kanawha replied by letter dated February 26, 1960, stating that counsel for Kanawha had advised it that the facts did not support National's conclusion that Kanawha's rights in the private road had terminated, and refused the request that Kanawha assign its right, title and interest in the private road to National.

The issues in this litigation as agreed to by counsel for the parties were as follows:

### Issues

1. Do the terms of the 1946 deed relating to the termination of the private road easement, properly interpreted, contemplate the construction of a public road into or through Kanawha's 3.9-acre tract to which access is not permitted from said 3.9-acre tract?

2. Are the provisions of the 1946 deed relating to termination of the private road easement, properly interpreted, satisfied by the construction of a public road into and through the contiguous 2.5-acre tract later acquired by Kanawha, to which road Kanawha would have only such access rights, if any, as the Court may find to exist under West Virginia law?

3. Are the provisions of the 1946 deed relating to termination of the private road easement, properly interpreted, satisfied by the construction of a public road into and through both the 3.9-acre tract and the contiguous 2.5-acre tract acquired by Kanawha after the date of the 1946 deed, to which road Kanawha has only such right of access, if any, as the Court may find exists at the point where the concrete apron abuts upon said 2.5-acre tract?

4. Does Kanawha's use of the private road in connection with the adjoining 2.5-acre tract entitle National to injunctive relief?

These issues as stipulated by the parties will be disposed of in that order:

### 1.

On the first issue National takes the position that since the 1946 deed provided that Kanawha's rights in the private roadway would terminate upon the completion of a "public road * * * into or through" the tract conveyed, that condition was satisfied when the Southside Expressway was completed. National argues that the words "public road" are words of plain and ordinary meaning, generally well defined and understood,

and that the controlled-access facility constructed by the State of West Virginia meets the classic definition of this phrase. In support of this position, National refers to the definition of a "public road" in Black's Law Dictionary (Fourth Edition) which states in effect that a road established by the proper authorities for the use of the general public and over which every person has a right to pass and use it for all purposes of travel or transportation is a "public road."

█ It occurs to me, however, that this somewhat restrictive approach to this issue elides the entire background and purpose of Kanawha's acquisition of the 3.9-acre tract from National. We are concerned here with the interpretation of the language of the 1946 deed and this requires that we ascertain the intent of the contracting parties at the time of the execution of the deed. Oresta v. Romano Bros. Inc., 137 W.Va. 633, 73 S.E. 2d 622 (1952). It is uncontroverted that at the time the deed was executed on February 6, 1946, Kanawha proposed to use the tract for the purpose of constructing and operating a business to manufacture and sell building blocks and other materials. At that time the tract was isolated and Kanawha obviously needed a way of ingress to and egress from the land to carry out the objectives of its acquisition. This was the sole and compelling reason for National's grant of the roadway easement to Kanawha in the deed of conveyance.

At the time of this transaction there were indications that a road might be constructed in the general area of this property at sometime in the future, and accordingly the parties included the phraseology here in question providing that the rights of Kanawha in the private road should terminate in the event the public road was constructed into or through the subject property. In this context, National's contention in regard to the meaning of the term "public road" in the deed is plainly incompatible with the intention of the parties at the time the deed was executed. The clear pur-

pose of the provision in the deed was to insure that Kanawha would have guaranteed access to its property, and that this access would be available by virtue of the roadway easement until such time as it might become available to Kanawha by virtue of the construction of a public road.

■ Our State Supreme Court has recognized the distinction between conventional roads and those designated as controlled-access facilities by the State Road Commission pursuant to West Virginia Code 17–4–43, as amended. See State ex rel. Ashworth v. State Road Commission (1962) 147 W.Va. 430, 128 S.E.2d 471. In its opinion in that case, the Court clearly stated that an abutting property owner has no vested right of access when a new highway is designated as a controlled-access facility. Since the expressway does not either in law or in fact afford to Kanawha access to the 3.9-acre tract, it is my conclusion that its construction through a portion of that tract did not satisfy the provisions of the 1946 deed nor terminate Kanawha's rights in the private roadway through National's property.

### 2.

The second issue involves the question of Kanawha's right of access to the Danner Hollow approach road and what effect such access, if it exists, should have on the rights of the parties in regard to the private roadway easement.

National's position on this issue is (1) that Kanawha has a vested right of access from the 2.5 acre tract to the Danner Hollow approach road; (2) that the residue of the 2.5-acre and 3.9-acre tracts should be treated as an integrated and cohesive unit which may be adequately served by the Danner Hollow Road; and (3) that the easement for a private roadway acquired by Kanawha over National's property by the 1946 deed is analogous to a "way of necessity" which has been terminated by reason of the available access to the Danner Hollow Road.

■ First of all, it is my opinion that Kanawha does not have any vested or irrevocable right of access from the 2.5-acre tract to the Danner Hollow Road. The Danner Hollow Road is clearly a part of the project which has been designated by the State Road Commissioner as a controlled-access facility and under West Virginia Code 17–4–41 neither Kanawha nor any other party may have any right of ingress or egress to or from such facility " * * * except at such designated points at which access may be permitted, upon such terms and conditions as may be specified by the commissioner." The deed executed by Kanawha to the State Road Commission contains no language reserving to Kanawha any right of access to the 2.5-acre tract, and absent any such reservation, Kanawha can have no right of access except by possible statutory permission from the Commissioner.

No statutory permit has ever been granted to Kanawha and it would necessarily be sheer conjecture whether any permit would be granted by the Commissioner if requested. Additionally, it would appear to be extremely doubtful that the State Road Commissioner would be willing to grant any access permit *in perpetuum* since official discretion would seem to require that any permit for access be contingent upon and subject to future changes in traffic patterns or other highway requirements in which the State of West Virginia would have a vital concern.

National contends that the attachment of Sheet No. 14 of Project U.317(3) to the deed from Kanawha to the Road Commission is of operative significance on this question of permissive access. In my opinion the engineering legend "Access Permitted Between These Stations for Future Appr." cannot by implication be raised to the level of any binding or irrevocable grant of access from the Road Commission to Kanawha. As a matter of fact, it would appear that Project Sheets Nos. 13 and 14 were attached to the deed merely for the stated purpose of showing the approximate location of drains, sewers, underpasses and other facilities specifically delineated in the deed

itself. National's position that Kanawha had an unequivocal and binding commitment from the State is not supported by the record, nor does the case of Ashworth v. State Road Commission, supra, cited by National support its argument on this point.

◼ Since I have concluded that Kanawha does not have, nor can it acquire, any assured or irrevocable right of access to the 2.5-acre tract, the disposition of the second stipulated issue could rest upon that determination alone. However, in any event, I do not believe that National is on sound ground in contending that Kanawha's easement over National's property is analogous to a way of necessity. Simply stated, the answer to this contention of National is that Kanawha acquired the subject easement not as a way of necessity, but by specific grant from National in the 1946 deed. As stated in Moyer v. Martin (1926) 101 W.Va. 19, 131 S.E. 859: "An easement by grant is radically different from an easement by necessity. * * * [T]he rule that the right of way by necessity is extinguished when the necessity to use it ceases has no application to ways acquired by grant." Having acquired its right of way appurtenant to the 3.9-acre tract by grant from National, Kanawha is entitled to use such right of way until it is terminated pursuant to the specific provisions of the deed, and under the reasonable construction of those provisions, it can be terminated only by the construction of a public road in or through such appurtenant tract which would give Kanawha a reasonably direct route for ingress to and egress from such tract. Assuredly, the easement which Kanawha acquired by grant from National as appurtenant to its purchase of the 3.9-acre tract cannot and should not be terminated by the tenuous possibility that Kanawha might obtain a permit at sufferance from the State Road Commissioner for access to the 2.5-acre tract which it had later acquired from Capitol Block Company. To do so would not only deprive Kanawha of a valuable property right which it purchased from

National but would give to National an unjustified advantage through the mere fortuity of Kanawha's acquisition of the additional acreage from Capitol.

3.

◼ My discussion and determination with respect to the first two issues presented by the stipulation of the parties embrace the questions posed by Issue 3. Suffice it to say, I conclude that the construction of the expressway through both the 3.9-acre tract and the contiguous 2.5-acre tract does not terminate or extinguish Kanawha's private road easement for the reasons that (1) the expressway is not a public road constructed into or through either of the tracts within the meaning of the provisions of the 1946 deed; (2) Kanawha has no legally guaranteed or irrevocable right of access from the expressway to the 2.5-acre tract; and (3) in any event, any possible right of access to the 2.5-acre tract should not properly be construed as an extinguishment of the private road easement which was appurtenant to the acquisition of the 3.9-acre tract.

4.

The final issue is whether Kanawha's use of the roadway to serve the 2.5-acre tract in addition to the 3.9-acre tract in the operation of its business entitles National to injunctive relief. On this issue National takes the position that the two tracts must be considered as separate parcels instead of the integrated unitary concept which it espoused in support of its argument on Issues 2 and 3.

◼ Unquestionably the language of the 1946 deed restricts the easement granted therein exclusively for the use and benefit of the 3.9-acre tract, and ordinarily under such circumstances the use of the easement "must be confined to the terms and purposes of the grant." Shock v. Holt Lumber Co., 107 W.Va. 259, 148 S.E. 73 (1929). Even in the absence of such restrictive language, it is well established in West Virginia that the easement cannot be extended to serve other lands of the owner of the dominant

tenement, but its use must be confined to the tract to which it is appurtenant. Springer v. McIntire, 9 W.Va. 196 (1876); Shaver v. Edgell, 48 W.Va. 502, 37 S.E. 664 (1900); Dorsey v. Dorsey, 109 W.Va. 111, 153 S.E. 146 (1930).

The underlying reason for this general rule of servitude is stated in the *Shaver* case:

"Except for this rule, the burden upon the servient estate might be increased at the pleasure of the owner of the dominant estate."

Kanawha contends that since all of its production and sales facilities are located on the 3.9-acre tract, its use of the easement incident to the 2.5-acre tract for storage purposes alone places no additional "burden" on National's servient estate. However, I agree with National that in this context this classic rule of property law is directed to the rights of the respective parties rather than the actual burden on the servitude. This distinction was recognized in McNeil v. Kennedy, 88 W.Va. 524, 107 S.E. 203 (1921) when the Court stated that the right to use the easement was restricted to the land to which it was appurtenant, but held there was no limit on the actual burden of the easement incident to the lawful exercise of such right.

In *McNeil* the owner of the dominant tenement used the easement to transport machinery and cattle to and from other properties owned by him for use on the dominant tract. The Court held that since such traffic was conducted for the use of the land to which the easement was appurtenant, it was immaterial insofar as the "burden" was concerned whether the traffic originated on lands of the plaintiff or came from some other source. Kanawha points out that if, instead of acquiring the 2.5-acre tract, it had stored its raw materials and blocks on other lands owned by it and had used the roadway to move these materials to and from its plant on the 3.9-acre tract, National would have no standing to complain under the holding in *McNeil*. This may well be true but it affords Kanawha

no helpful analogy to the present case for in *McNeil* the plaintiff was exercising his right to use the easement appurtenant to the dominant tenement alone. It is my conclusion therefore that Kanawha has exceeded the rights granted to it by the 1946 deed in using the private roadway to serve, at least to some degree, the 2.5-acre tract which it acquired from Capitol.

Kanawha contends, however, that its use of the roadway in this manner was known to National, and that National has been guilty of laches or is estopped from maintaining this action. Nothing in the record, however, supports this contention of Kanawha and I find no conduct on the part of National which would constitute an estoppel on its part nor any neglect or delay which would justify the application of the doctrine of laches.

It does not follow, however, from the foregoing conclusions that National is entitled to injunctive relief. While I have observed that the actual burden on a servitude is immaterial on the question of the legal rights and restrictions incident to the use of an easement appurtenant to a dominant tenement, the degree of the actual burden is a material and appropriate element in consideration of the application for injunctive relief. In the present case the 2.5-acre tract is used only for storage purposes and the additional traffic over the roadway generated by its use is minimal. Indeed, as counsel for Kanawha point out, if this storage facility was not adjacent to the plant, it is almost assured that traffic over the roadway to the 3.9-acre tract would be consistently heavier and more burdensome. To enjoin the use of the roadway with respect to the 2.5-acre tract would seriously impede the efficiency of Kanawha's operation, and would be of little or no benefit to National. It might also be observed that Kanawha's additional use of the roadway for the 2.5-acre tract was apparently not of an irritant nature to National until the present controversy arose.

Our Supreme Court considered the question of injunctive relief under such

circumstances in the case of Chafin v. Gay Coal & Coke Co., 109 W.Va. 453, 156 S.E. 47 (1930), and made the following observations:

" 'A principle which underlies the use of all easements is that the owner cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon. It is obvious that the application of this rule is largely a question of fact, depending upon the purpose and character of the particular easement and the surrounding circumstances. The cases recognize the doctrine that a material and injurious change may not be made, but that an immaterial change does not affect the easement.' 9 R.C.L. p. 790, § 47, title 'Misuser.' See 19 C.J. p. 979, § 227. Generally, injunctive relief will not be granted unless the injury is irreparable in its nature, unless there is some other ground of equity. Vol. 5, Michie's Digest 708. But without discussing that principle as applicable here, we prefer to apply another principle of equity which controls the cause. Injunction is an extraordinary remedy, and, to award it, a stronger and higher ground must be shown than is required for ordinary relief. When this extraordinary writ is asked for enforcement of a right respecting an easement, equity will consider the relative expense and inconvenience to which the parties would be put, and deny it if there is a great disproportion against the defendant. If the issuance of the writ will operate oppressively or inequitably, the writ will be denied. 14 R.C.L. p. 357, par. 60. Equities must be balanced. And if the injury done to a servitude by grant is capable of being ascertained and compensated at law, and inconvenience and loss to the other party would be serious, generally, the bill will be dismissed, reserving to plaintiff his right to proceed at law. Berkeley v. Smith, 27 Grat. 892. Each case must be decided upon its own circumstances, and it rests in the discretion of the court whether a mandatory injunction shall issue. See Mason v. Wall, 96 W.Va. 461, 123 S.E. 457; Lake Erie [& W. R. Co.] v. Essington, 27 Ind.App. 291, 60 N.E. 457; Green v. Richmond, 155 Mass. 188, 29 N.E. 770; Georke Co. v. Wadsworth, 73 N.J. Eq. 448, 68 A. 71. Can we say the lower court has abused its discretion? To enjoin defendant from bringing its coal from the 151-acre tract through and over the Mounts land to its tipple, simply because of this slight additional servitude on the surface of plaintiff's lot, would occasion serious. loss to defendant and would afford plaintiff very little benefit."

National contends that the *Chafin* decision has been narrowly limited and cites Hark v. Mountain Fork Lumber Co., 127 W.Va. 586, 34 S.E.2d 348 (1945). In that case the Court did distinguish *Chafin*, but pointed out that in *Chafin* the alleged wrongdoer's initial rights stemmed from a lease agreement while *Hark* involved an out and out trespass. In any event, *Chafin* was cited and followed in Charleston National Bank v. Thomas, 143 W.Va. 788, 105 S.E.2d 184 (1958). See also Judge Boreman's opinion in Gunther v. E. I. du Pont de Nemours & Co., 157 F.Supp. 25 (N.D.W.Va.1957).

When the evidence in the present case is appraised in the light of the foregoing authorities, it is clear that the benefits flowing to National by reason of injunctive relief would be minimal as compared to the damage and inconvenience to Kanawha as the result of such action. Accordingly, it is my conclusion that injunctive relief to National should be denied; without prejudice, however, to National's right to take any appropriate action involving any claim for damages incident to this phase of the controversy.

Counsel may prepare an appropriate order incorporating this opinion by reference therein.