# CHARLESTON

W. M. RITTER LUMBER CO. v. LOWE *et als.*

Submitted February 2, 1915. Decided February 23, 1915.

1. TRUSTS—*Implied Trust—Adverse Claimants—Sale of Timber.*
   There is no such relation between adverse *bona fide* claimants of title to land as will raise, for the benefit of the true owner, an implied trust in the contract price of timber sold from the land by the other claimant while in possession, though the latter took title pending an action of ejectment by which the title of the true owner was afterwards established. (p. 716).

2. INJUNCTION—*Grounds—Remedy at Law.*
   Where there is plain, complete and adequate remedy at law, equity refuses jurisdiction. (p. 718).

(POFFENBARGER, JUDGE, dissenting.)

Appeal from Circuit Court, McDowell County.

Bill by the W. M. Ritter Lumber Company against H. L. Lowe and others. From decree for the defendant named, plaintiff appeals.

*Modified and affirmed.*

*Cook, Litz & Harman,* for appellant.

*Strother, Taylor & Taylor,* for appellee Lowe.

ROBINSON, PRESIDENT:

· We are of opinion that the bill was properly dismissed. This is not a case for the jurisdiction of equity.

King claimed title to land known as the Monteville Hunt tract, in Buchanan County, Virginia, title to which was also claimed by Hunt. In the Circuit Court of the United States, the former recovered a judgment in ejectment against the latter, by default. Upon scire facias proceedings for execution on the judgment, certain issues were made and determined, resulting in the award of a writ of possession to put Hunt out of possession of the land. A writ of error was prosecuted therefrom to the Circuit Court of Appeals, which affirmed the judgment. Pending all this litigation, extending over a period of several years, Hunt conveyed his claimed title to Kroll, who conveyed the same to Lowe. The latter sold the timber on the premises to Walker and the Hurricane Lumber Company. They cut, manufactured, and removed the same. But they did not pay Lowe the purchase price agreed upon.

After the judgment in the ejectment suit had been affirmed, Lowe sued Walker and the Hurricane Lumber Company for the purchase price of the timber sold them, by an action in assumpsit in the Circuit Court of Buckhanan County, Virginia, and recovered a judgment in the premises. Later, upon writ of error, the judgment was affirmed by the Supreme Court of Appeals of Virginia. Lowe then brought an action on the appeal and supersedeas bond and was prosecuting the same when the suit which we have under review was instituted.

The present suit is by the Ritter Lumber Company, which took a conveyance of the King title to the land, pending the litigation in ejectment to which we have referred. The bill prays that Lowe be enjoined from further proceeding by his action on the bond to collect the purchase price of the timber which he sold to Walker and the Hurricane Lumber Company, and that the money due from the last named parties be decreed to it. So plaintiff herein claims in equity the price which Walker and the Hurricane Lumber Company agreed to pay Lowe for the timber. The bill alleges that Lowe is

insolvent. This, however, is denied by the answer, and not a word of proof in that regard appears. There is no charge that Walker and the Hurricane Lumber Company are insolvent. It in no wise appears that a recovery at law for a trespass in taking the timber from the land would be unavailing.

Plaintiff's theory is that the judgment in ejectment establishes its title to the land, and that therefore it may waive the trespass and claim the contract price of the timber cut and removed. But it does not appear that plaintiff's title was finally established by such a judgment at the time the timber was taken away. When the Hunt claim of title was conveyed to Lowe, the title was still being litigated in the ejectment suit. For all that is shown, this conveyance by Hunt was in absolute good faith—in reliance on a bona fide claim of title. He was contesting the validity of the default judgment in ejectment, even to the last resort. The timber was cut and removed while the litigation in ejectment was still pending on appeal—while Hunt, or his vendees, were still maintaining his title in the ejectment suit.

Hunt conveyed to Kroll, and the latter to Lowe, a title adverse to that of plaintiff. Under this adverse title Lowe sold the timber to Walker and the Hurricane Lumber Company and put them into possession. Later it was settled by the ejectment suit that plaintiff's title is superior. Then, is plaintiff in equity entitled to the unpaid purchase price from the purchasers of the timber? If plaintiff is so entitled, the incidental relief asked by way of injunction against Lowe's further prosecution of his action is perhaps pertinent.

But we fail to see any equity that plaintiff has in the fund. It arises out of no privity, contractual relation, trust, confidence, or fraud, whereby equity may declare it to be plaintiff's. It plainly arises out of an adverse claim of title. Lowe, in selling to Walker and the Hurricane Lumber Company, and they in the removal of the timber, were not dealing with the estate as plaintiff's, but with it as their own—at arm's length with plaintiff. They were guilty of no conversion of plaintiff's property, for they in good faith claimed it as their own, adversely to plaintiff. They were in no such relation to plaintiff, or to plaintiff's vendor, that an implied

trust would arise in favor of plaintiff. The purchase price of the timber did not grow out of plaintiff's title. It has no such connection therewith that plaintiff may impress it with an implied trust. It grew out of that which was distinct from, and at war with, plaintiff's claim to the land. It grew out of an adverse claim. Since it so arose, what breach of duty to plaintiff, what relation, or other equitable consideration, clothes it with a trust in plaintiff's favor?

It is suggested that Lowe and his vendees of the timber were purchasers *pendente lite*. True, they purchased while the ejectment suit was pending. But what equity in favor of plaintiff grows out of that? That amounts to no more than a matter of law whereby defendants lost title to the land by the judgment against Hunt. Defendants' relation to plaintiff as *pendente lite* purchasers was not established until after they had dealt with the property in good faith as their own and as in no way belonging to or connected with plaintiff or its vendor. The rule of a purchase *pendente lite* will at law put them out of possession of the land. It will assist plaintiff in an action for a trespass thereto. But it can not relate back and make defendants trustees for plaintiff for what they took from the land under a claim which at the time in no way bound them to care for plaintiff's adverse rights.

In *Gaines* v. *Lizardi et al.*, Federal Cases 5174, the court held: "Where a party is in possession of lands, claiming under an adverse but defective title, without any fraud either of himself or his grantors, he cannot be held to be the trustee of the party holding the true title, nor if he has sold the lands, made to account for the proceeds of the sale to the true owner." In the course of the opinion, Mr. Justice Bradley says that which is pertinent and applicable to the facts of the case before us: "The claim of the defendants is adverse to that of the complainant. There is no privity between them. They stand and have always stood at arm's length. The defendants claimed the lands to be theirs by one title; she claimed them to be hers by another. There was no privity or trusteeship between them. Had the defendants, by any fraudulent practice, or by the fraudulent practice of their grantors or predecessors (known to them), procured the legal title to the lands, then they might have been held as trustees,

and if they had disposed of the same, especially to innocent purchasers, might have been made to respond for the proceeds thereof. In such case the lands themselves might have been placed beyond the complainant's reach, and the proceeds might have been the only fund to which the complainant could resort. But in the present case the defendants never acquired the title of the complainant, nor legal title at all, but a spurious title; and their conveyance of the lands has transferred no title to the vendees; but the lands still remain subject to the complainant's title and are recoverable by her in whosesoever hands they may be.''

Just as the complainant in the case to which we have referred still had her remedy for the lands by reason of the true title adjudged to be in her, so in the case before us plaintiff has its remedy by an assertion of the true title, now established to be in it. It has an action for the trespass committed in taking off the timber. But from such a trespass, the same not having been committed out of relation to plaintiff's title, a trust does not arise.

It is said that ''a constructive trust may arise where one wrongfully takes possession or assumes control of property belonging to another.'' 39 Cyc. 190. Undoubtedly this is true in many cases. But it is not true where, as in this case, one in good faith assumes possession and control of property under a claim of title in himself wholly adverse to and in no way connected with that which may turn out to be the true title. In such instance it can not be said that he ''wrongfully takes possession or assumes control of property belonging to another.'' It is not wrongful for one in good faith to rely on an adverse title. It is his legal right to do so. All this is quite different from a case in which one wrongfully deals with the true owner's title to property, or where one has the title or property of another in such charge or assumes such control over it that he converts it to his own or some other use regardless of a just recognition of the owner's rights.

As we perceive the case, plaintiff is virtually seeking in equity the recovery of damages for that which, by the final judgment in the ejectment case, turned out to be a trespass on its land. We have already stated that no reason is dis-

closed why equity should intervene. Plaintiff may proceed at law against those who took its timber. Why can not it recover directly by a judgment against them? It does not tell us. The only right that it shows by its bill is one in tort for damages—a mere legal demand on an unliquidated claim. It has remedy at law, and the same is adequate. The law forum is the proper one for the assertion of such a right. The suit against Lowe to recover in lieu of damages the price for which he sold the timber, joining as parties those from whom that price is due him, rather in the nature of an attachment or a suggestion of the funds in their hands, is plainly unsupported by any peculiar grounds of equity cognizance and can not be maintained. 2 Story's Eq. Jur. 794.

The decree should have contained a reservation saving plaintiff's right to sue at law. In such particular the decree will be modified, and as so modified it will be affirmed.

*Modified and affirmed.*