**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1279**

PATRICK HENRY ESTATES HOMEOWNERS ASSOCIATION, INCORPORATED,
a West Virginia corporation,

            Plaintiff - Appellee,

     v.

GERALD MILLER, Dr.,

            Defendant - Appellant.

Appeal from the United States District Court for the Northern
District of West Virginia, at Martinsburg.  John Preston Bailey,
Chief District Judge.  (3:08-cv-00175-JPB)

Submitted:  December 20, 2011       Decided:  January 20, 2012

Before NIEMEYER and SHEDD, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

Richard G. Gay, Nathan P. Cochran, LAW OFFICE OF RICHARD G. GAY,
LC, Berkeley Springs, West Virginia, for Appellant.  Braun A.
Hamstead, HAMSTEAD & ASSOCIATES, L.C., Charles Town, West
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Patrick Henry Estates Homeowners Association, Incorporated ("Association") brought an action against Dr. Gerald Miller, the present owner of certain properties within the residential development, Patrick Henry Estates Subdivision ("Subdivision"), seeking injunctive and declaratory relief, as well as compensatory damages.[*] Miller appeals the district court's order granting the Association permanent injunctions and compensatory damages. We have thoroughly reviewed the record and find no reversible error. Accordingly, we affirm.

The Subdivision is accessed from U.S. Route 340 over a short public roadway known as Patrick Henry Way, which becomes a private road as it enters the Subdivision, running in a northern direction and providing access to lateral side streets. Miller obtained ownership of the Subdivision in 1986 and sold Sections C and D to other developers, but retained ownership of the common areas, roadways, and Lot C-1. The Declaration of Road Maintenance Covenants and Restrictions ("Declaration"), which governs the real property within the Subdivision, provides that it is the responsibility of the developer "to maintain the

_____

[*] The case was originally filed in the Circuit Court of Jefferson County, West Virginia, and later removed to the District Court for the Northern District of West Virginia by Miller, based upon federal diversity jurisdiction.

streets, and all common properties . . . until such time as these amenities are dedicated and deeded to the Association." In addition, the Declaration provides that the developer "shall convey the common properties to the Association . . . not later than January 1, 1987." Miller attempted to have the State Highway Department take over road maintenance to avoid his responsibility to maintain the streets, did not complete construction of the roads by January 1, 1987, and did not convey the roadways to the Association once completed. The parties do not dispute that the roads, as well as the drainage system, were in need of repair at the time of trial. In addition, Miller permitted weeds and grass to grow to an excessive height on Lot C-1.

In July 2008, Miller informed the Association of his intent to develop land located immediately adjacent to the Subdivision into a residential apartment complex, known as Sloan Square Apartments ("Sloan Square"). Miller planned to utilize Lot C-1, which the plat of Patrick Henry Estates describes as a residential lot, as a roadway to access Sloan Square. In addition, approximately 42 acres of the Subdivision, which lie immediately adjacent to the existing residential development to the north, were never developed. In 2006, Miller annexed the 42-acre undeveloped parcel into the City of Ranson, West Virginia, intending to construct a residential and commercial

3

development on the parcel, known as the Village of Shenandoah Springs ("Village"). Miller purchased a lot in the adjacent existing Shenandoah Springs Development to use as one of two access points to the Village. Prior to this litigation, Miller anticipated annexing Patrick Henry Way into the City of Ranson as well, to serve as the second access point. In order to complete this construction, however, Miller needed to reserve unrestricted rights of way through the Subdivision streets.

Upon discovery of Miller's intended construction, the Association filed a complaint against Miller, seeking: (1) a permanent injunction requiring Miller to maintain the roads in the Subdivision, or, alternatively, damages to conduct the necessary repairs; (2) a permanent injunction requiring Miller to dedicate and deed the common elements within the Subdivision to the Association; (3) a permanent injunction prohibiting Miller from using Lot C-1 as an access roadway to Sloan Square; (4) a permanent injunction requiring Miller to maintain Lot C-1 in accordance with the Declaration; and (5) compensatory damages of not less than $250,000 for the Association's previous expenditures to maintain the roadways from 1985 to the filing of the instant lawsuit.

Following a bench trial, the district court found that the Declaration unequivocally required Miller to maintain the roads and common properties in the Subdivision, and ordered

4

Miller to bring the roads, drainage, and other common elements of Patrick Henry Estates up to the condition that would have existed had they been properly maintained since their construction. In the alternative, the court ordered Miller to pay the Association an amount equal to the cost provided by the Association's contractor to perform the work. The court also awarded the Association an injunction requiring Miller to execute a deed conveying the common elements of the Subdivision to the Association.

With respect to the scope of Miller's easement, the court found that Miller may utilize a reserved right of way over Patrick Henry Way to access the residue of his property to the north for limited commercial purposes, but may not use Beauregard Boulevard or Greene Avenue, lateral side streets in the Subdivision, to access any commercial development, as these roadways exist to access single-family homes. Additionally, the court ruled that Miller may not utilize Patrick Henry Way to access property in addition to the residual portion of Patrick Henry Estates, as this would cause the roadway to become a "through road," greatly increasing the traffic and extending the easement to other lands owned by Miller. The court granted the Association an injunction prohibiting Miller from utilizing Lot C-1 as a roadway, as it would be impossible to access Sloan Square through Lot C-1 without crossing the "Walking and Buffer

5

Area" directly behind the lot, which is a common element of the Subdivision owned by the Association. Further, the court ordered Miller to maintain Lot C-1 "in such a manner that the grass or other vegetation thereupon does not reach a height of eight (8) inches." Finally, the court awarded the Association compensatory damages in the amount of $51,387 for expenses incurred by the Association in maintaining the Subdivision since 1998, but denied the Association's request for attorney's fees.

We review a district court's conclusions of law at a bench trial de novo and its factual findings for clear error. Roanoke Cement Co. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005). On appeal, Miller contends that the district court erroneously prohibited the use of Patrick Henry Way to access property in addition to the residual portion of the Subdivision— the 42 acres of undeveloped land. Miller first contends that the district court misinterpreted the plain language of the Declaration and the Subdivision deeds. The deed from the original grantor (Shendo) reserving an easement over the Subdivision's roadways, which appears in the chain of title for all of the lots located in Section B and D of the Subdivision, states in relevant part: "The Grantees acknowledge that Shendo has reserved and retained the right to provide within the Patrick Henry Estates Subdivision areas for commercial, educational, civic, social, charitable, medical and other

6

purposes."  Based upon this language, Miller argues that he is entitled to reserve unrestricted easements and rights of way that would allow him to complete the development of the 42-acre property.

Pursuant to West Virginia law, which governs this diversity lawsuit, "[t]he fundamental rule in construing covenants and restrictive agreements is that the intention of the parties governs.  That intention is gathered from the entire instrument by which the restriction is created, the surrounding circumstances and the objects which the covenant is designed to accomplish."  G. Corp., Inc. v. MackJo, Inc., 466 S.E.2d 820, 825 (W.Va. 1995) (citing Wallace v. St. Clair, 127 S.E.2d 742, 751 (W.Va. 1962)).  Further, the owner of an easement "cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon."  Nat'l Lead Co. v. Kanawha Block Co., 288 F. Supp. 357, 365 (S.D.W. Va. 1968). "An easement of a right of way over another's property . . . is not personal to the owner, authorizing him to use it in connection with other real estate he may own."  Dorsey v. Dorsey, 153 S.E. 146, 146 (W.Va. 1930); see also Ratcliff v. Cyrus, 544 S.E.2d 93, 97 (W.Va. 2001) ("[A]n easement cannot be extended as a matter of right, by the owner of the dominant estate, to other lands owned by him.") (internal quotation marks and citation omitted).

7

The district court correctly held that Miller's intended use of Patrick Henry Way to connect his planned Village, located on the 42-acre undeveloped parcel of the Subdivision, to the adjoining existing Shenandoah Springs Development, would overburden the easement and exceed its intended scope. The deed language reserves an easement over the Subdivision roadways for future commercial, educational, civic, social, charitable, or medical developments "*within* the Patrick Henry Estates Subdivision areas." (emphasis added). Miller seeks to impermissibly extend the reserved easement through Patrick Henry Way beyond the dominant property—Patrick Henry Estates—into the adjacent Shenandoah Springs Development lot owned by Miller, so as to access the City of Ranson. As the district court correctly found, Miller cannot utilize his reserved easement to access property he owns outside of Patrick Henry Estates. Moreover, we find unimpeachable the court's finding that Miller's intended use of Patrick Henry Way to connect his planned Village to the Shenandoah Springs Development and the City of Ranson would expose the Subdivision to traffic from a major highway, Flowing Springs Road, thereby significantly increasing the roadway traffic and overburdening the easement.

Miller next contends that the district court's failure to consider the City of Ranson's Annexation Order, which annexed

8

Miller's 42-acre undeveloped property into the Ranson city limits, "usurp[ed] the plenary power of the City of Ranson." According to Miller, "the District Court ruled that Miller cannot connect his undeveloped property (now lying totally within Ranson) to the Ranson city streets." However, Miller plainly misconstrues the holding of the district court; the court's order prohibits Miller from utilizing Patrick Henry Way to access property *beyond* the 42-acre undeveloped parcel, namely, the existing Shenandoah Springs Development, which connects to the highway of Flowing Springs Road. Notwithstanding the court's order, Miller may still utilize the lot purchased in the adjacent existing Shenandoah Springs Development to access the planned Village, thereby connecting the Village to the City of Ranson.

Miller next argues that the district court erroneously found that Miller may not use Lot C-1 as an access point to reach Sloan Square. Miller asserts that the Declaration permits him to change the use of Lot C-1 from residential to street access. However, a "Walking and Buffer Area" is located immediately behind Lot C-1, which is a "common element" of Patrick Henry Estates subject to the court-ordered conveyance to the Association. Therefore, the district court correctly held that Miller may not construct a roadway on Lot C-1 across the

9

"Walking and Buffer Area," now owned by the Association, without the Association's permission.

Miller next argues that the district court erred in awarding the Association permanent injunctions prohibiting Miller from using Patrick Henry Way to access property in addition to the residual portion of Patrick Henry Estates, prohibiting Miller from using other lateral side streets of the Subdivision to access commercial development, and prohibiting Miller from using Lot C-1 to access Sloan Square. According to Miller, the court's injunctions have the effect of prohibiting his intended development on the 42-acre property, as well as Sloan Square, because current subdivision regulations require two entrances, and the court-ordered injunctions leave both developments with only one entrance. Thus, Miller argues, the injunctions are more burdensome than necessary and broader in scope than necessary.

The grant of a permanent injunction is reviewed for abuse of discretion. Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n, 263 F.3d 379, 392 (4th Cir. 2001). In doing so, we review the district court's factual findings for clear error and its legal conclusions de novo. Id. Under West Virginia law, a permanent injunction is appropriate "where the right of an applicant seeking relief is clear and the necessity for such relief is urgent." Sams v. Goff, 540 S.E.2d 532, 535

10

(W.Va. 1999) (citing State Rd. Comm'n v. Oakes, 149 S.E.2d 293 (W.Va. 1966)). Further, "[f]or the existence of a legal remedy to bar injunctive relief, it must appear that the legal remedy is as practical and efficient to secure the ends of justice and its prompt administration as injunctive relief." Id. (citing Consumers Gas Util. Co. v. Wright, 44 S.E.2d 584 (W.Va. 1947)). In deciding whether to grant a mandatory injunction, a court should consider "the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved." Foster v. Orchard Dev. Co., LLC, 705 S.E.2d 816, 827 (W.Va. 2010). We find that the district court did not abuse its discretion in awarding the Association permanent injunctions, as a remedy at law would be inadequate.

Miller next asserts that the district court abused its discretion in awarding the Association damages at law for prior maintenance provided by the Association, while also awarding the Association permanent injunctions prohibiting Miller from utilizing Lot C-1 to access Sloan Square or Patrick Henry Way to access property beyond the 42-acre parcel, as well as ordering Miller to bring the roadways up to the condition that would have existed had the roads been properly maintained since their construction.

11

We review a district court's award of damages under a clearly erroneous standard. See Kolkhorst v. Tilghman, 897 F.2d 1282, 1288 (4th Cir. 1990) ("The trial court, as a fact-finder, possesses considerable discretion in fixing damages, and its decision will be upheld absent clear error.") (citing Little Beaver Enter. v. Humphreys Rys., Inc., 719 F.2d 75, 79 (4th Cir. 1983)). We find that the court's award of damages at law, as well as an injunction requiring compliance with the Declaration, was within the court's discretion.

Based on the foregoing, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

12